**The People of the State of Illinois, Plaintiff-Appellee, v. George Lockett, Defendant-Appellant.**

**Gen. No. 51,041.**

First District, Third Division.

July 20, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Ronald Sandler, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, George Lockett, was indicted for the offense of murder, tried by a jury, found guilty of voluntary manslaughter, and was sentenced to serve a term of from 7 to 17 years in the penitentiary.

The defendant contends on appeal that his conviction was brought about by the refusal of the trial court to give a defense instruction on the subject of self-defense. In the alternative, he contends that the sentence imposed by the trial judge is too severe and requests this court to reduce it.

Alonzo Woods, age 18, was shot twice—once in the arm and once in the heart—on the evening of April 7, 1965. He died the next day, never having regained consciousness. Two youths, acquaintances of both Lockett and Woods, were inside a food store belonging to Lockett's aunt when they heard four shots fired. They ran outside just in time to see Woods fall to the ground and Lockett run away.

Early the following morning Lockett, age 17, accompanied by his parents, surrendered to the police. He admitted firing the shots which killed Woods, but asserted that he and Woods had fought on prior occasions and that he had been beaten up repeatedly. He had a black eye at the time and complained of pains in his groin. He asserted that when they met on April 7th he thought Woods was going to strike him and he pulled the revolver and began shooting.

At his trial he testified that he and Woods associated together but were unfriendly; that they had a fight two weeks before the shooting and had fought twice the night before, and that on these occasions Woods was both the

412

aggressor and victor. He said that preceding the last fight Woods remarked, "Don't you know I'll kill you?" His testimony about the two fights the night before the shooting was corroborated by one of the boys who heard the shots fired on April 7th.

Lockett further testified that after his last beating he stole a gun from his aunt's store because he was not in condition to fight and did not want Woods jumping on him. He said he did not go looking for Woods but the next evening, with the weapon in his pocket, he stood outside the store for two hours. Woods walked up and swung at him. He said he fired a shot over Woods' head and warned him to leave him alone. When Woods put his hand into his pocket Lockett thought he was reaching for a gun and shot him. However, he also testified that Woods was ten feet away when the first shot was fired. After the shooting Lockett got on a bus, transferred to the elevated, threw his gun away and went to a relative's home. From there he telephoned his parents.

Lockett stated that he thought Woods was reaching for a gun because he knew Woods had carried a gun on previous occasions; that he had been shot in the leg by an unknown person in January 1965, and several weeks afterwards people in the neighborhood told him that Woods was saying he did it. The officer who had investigated the January 1965 shooting testified in rebuttal that his report of that incident indicated that Lockett stated that he was in the company of his friend, Lorenzo Woods, when he was shot. Furthermore, the witness who had corroborated Lockett's account of the two fights on April 6, 1965, testified that he had never known Woods to carry a gun. No gun or weapon of any kind was found on or near Woods' body.

From this evidence the jury could have found that the killing was murder, manslaughter or justifiable homicide. It was murder if Lockett sought revenge against Woods, armed himself for this purpose, stood in

413

one place for two hours waiting for Woods to come by, shot at him from ten feet away as he approached and then fired three more shots at him in rapid succession. It was manslaughter if Lockett believed he was in danger of losing his life or suffering great bodily harm but under the circumstances his belief was unreasonable. It was justifiable if Lockett reasonably believed the killing was necessary to prevent his own death or his receiving great bodily harm from the boy who he said had bullied and beaten him. Murder: Ill Rev Stats 1965, c 38, § 9–1(1); People v. Davis, 35 Ill2d 55, 219 NE2d 468 (1966); Manslaughter: Ill Rev Stats 1965, c 38, § 9–2(b); People v. Johnson, 54 Ill App2d 27, 203 NE2d 283 (1964); Justifiable Use of Force: Ill Rev Stats 1965, c 38, § 7–1; People v. Strader, 23 Ill2d 13, 177 NE2d 126 (1961); People v. Smith, 404 Ill 350, 88 NE2d 834 (1949). For a killing to be justifiable it is not necessary that the danger be real. If the defender had reasonable ground to believe himself in danger of losing his life or of suffering great bodily harm he may protect himself even if he is mistaken and the danger only apparent. Whether the danger is actual or apparent does not depend upon the assailant using a deadly weapon or having one in his possession. People v. Motuzas, 352 Ill 340, 185 NE 614 (1933); People v. Organ, 345 Ill 339, 178 NE 73 (1931).

The defendant presented an instruction embodying the principle that it is not necessary for the assailant to be armed. The trial court refused to give the instruction and the defendant contends that this was reversible error. The instruction reads as follows:

"The Court instructs the jury that if you find from the evidence that the deceased was physically capable of inflicting great bodily harm upon the defendant, and that the defendant had reason to believe and did believe that the deceased was about to inflict such injury upon him, and under such belief

414

wounded the deceased to prevent himself from such harm, then it is immaterial whether the deceased was armed or not at the time of the killing."

The refused instruction stated correct principles of law. The State objected to it on the sole ground that the word "wounded" was misleading because the deceased was more than wounded. This objection could have been met by the insertion of the word "fatally" before the word "wounded," but the failure to do this did not invalidate the instruction. The deceased was dead whether the instruction said the defendant wounded or fatally wounded him. The instruction could well have been given and the failure to do so would have been error had not the court instructed the jury on the same principle of law.

The defendant submitted other instructions on self-defense which were accepted by the court and read to the jury. Among them was the following:

"The Court instructs the jury that if a person is assaulted in such a way as to induce in him a reasonable and well grounded belief that he is actually in danger of losing his life, or of suffering great bodily harm, then he would be justified in defending himself whether the danger is real or only apparent. Actual and positive danger is not indispensable to justify self-defense. All that is necessary is that the defendant had reasonable grounds to believe that the danger was real and about to fall on him, and if he acted in good faith and under an honest belief that he was in apparent danger of losing his life or receiving great bodily harm, then he cannot be found guilty, even though he may have made a mistake as to the impending danger."

 This instruction is broader in scope than the refused one but it sufficiently covers the principles of law contained in that instruction. A court is under no obliga-

tion to give more than one instruction on the same subject matter (People v. Young, 398 Ill 117, 75 NE2d 349 (1947)) and if an instruction is given which adequately covers the same subject as the one refused, it is not error for the court to refuse the latter. People v. Moretti, 6 Ill2d 494, 129 NE2d 709 (1955).

■ The statutory penalty for the offense of voluntary manslaughter is imprisonment in the State penitentiary for a period of from one to twenty years. Ill Rev Stats 1965, c 38, § 9–2(c). In the case at bar the prosecutor recommended a sentence of 10 to 20 years and the trial judge imposed a sentence of 7 to 17 years. The defendant protests that this sentence is too severe and urges this court to reduce it under the power granted us by Ill Rev Stats 1965, c 38, § 121–9(b)(4). Under the sentence imposed the defendant will be eligible for parole when he has served four years and nine months (including time credit for good behavior). This is not a harsh minimum period of servitude for one who has taken another's life under circumstances the jury found were unjustifiable. The minimum and maximum limits of the sentence allow the State Parole Board wide latitude in determining when the defendant should be released and give it ample time to ascertain whether or not he has been successfully rehabilitated.

The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.