**People of the State of Illinois, Plaintiff-Appellee, v. Dennis Terczak, Defendant-Appellant.**

Gen. No. 67–133.

Second District.

June 27, 1968.

John Vogel, of Glen Ellyn, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Frank Wesolowski, Assistant State's Attorney, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This is an appeal from a conviction for armed robbery. The defendant was found guilty after a trial by jury and was sentenced to a term of from three to ten years, to be served concurrently with a sentence on another armed robbery conviction. The defendant contends that he was deprived of a fair trial by virtue of numerous acts of misconduct on the part of the prosecution and erroneous rulings by the trial court.

The robbery took place on December 19, 1966, at a restaurant in Lombard, known as the "Chicken Delight." The time was about 9:45 p. m., and there were two employees on duty, Kathleen Spiece, the manager, and Robert Adams. Kathleen Spiece testified that a man entered the restaurant at that time and ordered a can of Pepsi Cola, which she served him at the counter. He then asked her whether there was a job available at the restaurant, and she suggested to him that he fill out one of the job application forms on the counter. Kathleen testified that she then walked into the back room of the restaurant. The man then called to her, she returned to the counter, and the man pointed a gun at her, demanding the contents of the cash register. She emptied the cash from the cash drawer into a bag and handed it to him. The man then left the restaurant, whereupon Kathleen went to the back room and telephoned the owner of the restaurant. She described the gun as being a revolver of a "kind of silver" color. Robert Adams did not see the actual robbery, because he was in the back room of the restaurant when it took place.

At the trial, Kathleen Spiece positively identified the defendant as the robber, and Robert Adams identified defendant as the man he had seen enter the restaurant immediately before the robbery took place. Kathleen had identified a photograph of the defendant about a week

after the robbery, and had thereafter identified the defendant in a lineup on January 6, 1967.

The defendant testified in his own defense. He admitted on his direct examination that, several weeks prior to the instant trial, he had entered a plea of guilty to the armed robbery of a gasoline station in Villa Park, Illinois, on December 29, 1966. He introduced into evidence a black automatic pistol which he said belonged to him. He stated that he had never owned any other gun, and, specifically, that he had never owned the type of revolver described by Kathleen Spiece. He denied his guilt in the instant case and denied that he had been in the "Chicken Delight" restaurant on the date in question. He offered no account of his whereabouts at the time of the crime.

The defendant's girl friend, Janine Marie Woerner, testified for him as an alibi witness. She stated that she met him at about 5:00 p. m. on December 19, 1966, and that they went bowling together at Oak Brook. She testified that they were together continuously that evening until she took the defendant home at about 5 or 10 minutes after 10 p. m. She testified that she knew she had the right date because December 19 was a Monday and she was off work only on Monday and Friday nights. She was employed at Chandler's Shoe Store in Oak Brook.

In rebuttal, the People produced Raymond Condon, the assistant manager of Chandler's Shoe Store. He identified the time records of the store, bearing the signature of Janine Woerner, which showed that she had worked from 4:30 p. m. until 9:30 p. m. on Monday, December 19, 1966. The record further showed that Janine Woerner did not work the evening of Thursday, December 22.

In surrebuttal, Janine Woerner explained, that, since payday was Thursday, and she wanted to be paid for Thursday, she recorded her Thursday hours as having been worked on Monday. She stated that this practice was approved by a Mr. Stos, the manager of the store.

376

It developed that Mr. Stos was in a body cast at the time of the trial and was unavailable as a witness. Mr. Condon, recalled by the People, denied knowledge of any such practice occurring at the store.

Another defense witness was Cassandra Dawn Johnson, a coemployee of Janine's at the shoe store. She happened to recall seeing the defendant and Janine together at the shoe store at 7:30 p. m. on December 19. She stated that she had worked from 5:00 p. m. until 9:30 p. m. on that day. On cross-examination, she was shown the time sheet, which indicated that she had worked from 4:30 p. m. to 6:30 p. m. on December 19. She then admitted that she could have been mistaken about the date on which she had seen the defendant and Janine together at the store.

The defendant does not contend that the evidence was insufficient to support the verdict. We will discuss the various errors he does assign.

■ The owner of the restaurant, George Hoganson, was called as a witness for the People. He testified concerning the layout of the restaurant, and what he observed when he went to the store after receiving a telephone call from Kathleen Spiece. He was not asked how much money had been taken from the store. He left the stand, but was later recalled, and, over objection, was permitted to testify that the loss was approximately $159. The evidence is clear that the gunman did obtain United States currency in the robbery, and both sides agree that the amount is immaterial. Nonetheless, defendant contends that the additional testimony of this witness was cumulative and "prejudicial." We think the testimony was unnecessary but we fail to see how it was prejudicial to defendant.

Another point that defendant makes is that he was unduly restricted in his efforts to rehabilitate his two alibi witnesses after they had been impeached by the shoe store time records. He argues that Janine Woerner was not permitted to give an explanation as to why the time

377

record showed her at work on Monday, December 19, when she claimed she had not worked that day. As we have already indicated, she was permitted to testify in surrebuttal concerning her alleged arrangement with Mr. Stos, and there is no merit to defendant's contention.

■ In regard to Cassandra Dawn Johnson, after it had been established on her cross-examination that the time sheet showed she left work at 6:30 p. m. on December 19, in contrast to her statement on direct examination that she had seen Janine and the defendant at the shoe store at 7:30 p. m., defendant's counsel asked on redirect examination, "Sandy, could it have been 6:30 that you saw Dennis?" An objection to this question was sustained, and defendant assigns this as error. We think the objection was properly sustained, because the question was leading. Moreover, whether it "could" have been 6:30 is not a proper inquiry of one's own witness, because it simply invites speculation, rather than a statement of fact.

■ ■ Defendant's next point is that the identification testimony of Kathleen Spiece should have been excluded because of the improper composition of the lineup she viewed. He concedes that the requirement of representation by counsel at the lineup stage, United States v. Wade, 388 US 218, 87 S Ct 1926, 18 L Ed2d 1149 (1967), is not applicable in this case, because the Wade case was decided after the date of the lineup and is prospective only. Stovall v. Denno, 388 US 293, 87 S Ct 1967, 18 L Ed 2d 1199; People v. Neiman, 90 Ill App2d 337, 347, 232 NE2d 805 (1967). Defendant does contend, however, that since the other four persons in the lineup with him were not sufficiently comparable to him in size, age, and appearance, and inasmuch as their clothing differed from his, the lineup was so unfair as to require the exclusion of Kathleen's testimony. We believe that these matters go simply to the weight of Kathleen's testimony rather than its admissibility. There was considerable testimony

concerning the physical characteristics of other persons in the lineup, and the jury had an adequate basis to evaluate the extent to which the composition of the lineup affected the weight of Kathleen's identification. It is important to note that according to the testimony, Kathleen Spiece positively identified a photograph of the defendant prior to the time she saw him in the lineup. If this is the fact, and, viewing the evidence in the light most favorable to the People, we must assume it is, then the importance of the lineup to the identification question assumes a lesser importance than it otherwise would have. The uncontradicted evidence is that the restaurant was well lighted, that the gunman was the only customer in the place at the time of the robbery, and that Kathleen Spiece had a face-to-face confrontation with him for a period of time which the jury could reasonably find was sufficient to enable her to make subsequent identification. Under all of these circumstances, we believe that Kathleen's identification testimony was clearly admissible, and that its weight was properly a matter for the jury. People v. Neiman, 90 Ill App2d 337, 346–347, 232 NE2d 805 (1967). Moreover, the defendant made no motion to exclude her testimony at the time of the trial. However, we do not choose to base our conclusion on this fact, since, even if a timely motion had been made, it is our view that it would properly have been denied.

The next assignment of error relates to the cross-examination of the defendant and Janine Woerner. The contention is that the People laid a foundation for impeachment of these witnesses on certain points, and then failed to offer the impeaching evidence. As to the defendant, this contention rests upon the fact that, on cross-examination, he was asked whether he had possessed any gun on December 29, 1966, other than the one he identified as belonging to him. December 29, 1966, was the date of the other robbery at the gasoline station in Villa Park. Defendant denied that he had possessed

any other gun on that date. He was then asked, "Do you recall a drawer in the back room of a gas station?" . . . at which point an objection was sustained and the question was never completed. Defendant contends that, since it was never proved that he did possess a second gun on December 29, these inquiries were improper.

■ We feel that the first question, inquiring as to whether defendant had possession of another gun on December 29, was not improper. Although he identified a particular gun as belonging to him, he did not specifically state that this was the gun he had used in the December 29 robbery of the filling station. Therefore, we think it was legitimate for the People to ask whether he had possession of some other gun on that date. Defendant opened up this line of inquiry when, on his direct examination, he testified that he had never, at any time, owned any gun other than the one he identified. We do not think that the first question carried with it any implication that the State was in a position to impeach defendant's denial that he had a second gun on December 29.

■ The second question, which was interrupted by an objection, was more specific, and, we think, did imply the availability of impeaching evidence. However, defendant's objection to the question was sustained. It might have been well to instruct the jury to disregard the question, but defendant did not make such a motion. Furthermore, we believe that the nature of the question, as far as it went, was not such as to give rise to an inference that the State had evidence (other than the testimony of Kathleen Spiece) that defendant had possession of some other gun on December 19, the date of the instant robbery. The question, to the extent it implies anything, would seem to imply that defendant found another gun in a drawer in a back room of the gas station. Clearly, then, the jury would not be likely to conclude that this would be the gun Kathleen Spiece described as having been in defendant's possession ten days earlier.

Thus, while we feel the interrupted question should not have been started unless the People intended to follow up with proper impeaching evidence, we do not think that the impact of the question was so prejudicial as to require a reversal of defendant's conviction.

■ In regard to Janine Woerner, she was cross-examined about whether she had discussed the case with Cassandra Johnson over the telephone, or in the hall outside the courtroom, prior to the time Cassandra testified. Defendant contends that these questions implied that there was some improper communication by Janine to Cassandra, and that, since the People did not prove that such communication took place, this cross-examination was prejudicial. We do not agree. Janine was the defendant's girl friend, and she worked with Cassandra. They gave somewhat similar alibi testimony, and they were both impeached by the time records of their employer. Under these circumstances, we believe it was proper for the People to inquire whether the two girls had discussed the case with each other before they testified. The State did not, by its question, imply the tenor of any conversations between the girls, but merely inquired as to whether they had discussed the case. Both girls admitted that there had been at least some communication between them about the case, and this was the only fact the State was attempting to establish by the questions. Accordingly, we find no error in the questions which were asked of Janine Woerner on this subject.

■ Defendant's next complaint is that, on two occasions, the Assistant State's Attorney turned over statements of prosecution witnesses to defense counsel in the presence of the jury. This practice has been criticized under some circumstances, People v. Beard, 67 Ill App2d 83, 89–92, 214 NE2d 577 (1966), but, in the instant case, we do not believe the defendant was prejudiced by the manner in which the statements were produced. There

381

was considerable colloquy in the case, in the presence of the jury, much of it initiated by defense counsel, concerning the production of reports, the contents of reports, and the like. Some of these statements of prosecution witnesses were turned over to the defense in chambers. However, on one of the occasions of which defendant now complains, the statement of the witness was produced in the presence of the jury only after defense counsel inquired, in the presence of the jury, "Your Honor, do we have to go into chambers again?" Thus, the defense attorney was at least as responsible as the State's Attorney for the fact that the jury knew that statements and reports were being produced by the State.

Defendant has several other complaints about the conduct of the Assistant State's Attorney, but they are not substantial enough to require discussion. We find no reversible error in the record, and, accordingly, the judgment is affirmed.

Judgment affirmed.

DAVIS and SEIDENFELD, JJ., concur.