People of the State of Illinois, Plaintiff-Appellee, v.
O. C. Powell, Defendant-Appellant.

Gen. No. 51,925.

First District, Fourth Division.

September 11, 1968.

Gerald W. Getty, Public Defender of Cook County, of
Chicago (Theodore A. Gottfried and James J. Doherty,
Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Edward Stasukaitis, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Murder.[1]

DEFENSE AT TRIAL: Justifiable use of force in defense of person.[2]

JUDGMENT: At a jury trial the defendant was found guilty and was sentenced to the penitentiary for a term of 14 to 25 years.

POINTS RAISED ON APPEAL:

1) Prejudicial error occurred when the court prevented defense counsel from impeaching a prosecution witness.

2) Reversible error occurred when the prosecutor turned over witness statements and police reports in front of the jury.

---

[1] Ill Rev Stats 1965, c 38, § 9–1(a): A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; . . .

[2] Ill Rev Stats 1965, c 38, § 7–1. A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.

EVIDENCE: **Testimony of State's witnesses.**

Dorothy Terrell testified that on July 25, 1965, she was living with her sister at 4729 South Indiana Avenue; that she had known the deceased, James R. Guynes, for several years, and had gone with him to another sister's home at 215 East 47th Street on the evening of July 25, about 7:00 o'clock. She stated that she sat on the rear porch of the second-floor apartment, drinking with several other persons, among whom was the defendant, O. C. Powell, who she said was her cousin. She said the deceased had not joined the group on the porch, but remained in the parking lot playing with the children.

The witness testified that after they had been on the porch for about an hour the defendant went to his room, saying he was going to bed. His room at the rear of the apartment had a screened window which overlooked the porch and could be entered through the kitchen. The witness further testified that the deceased came up the stairs, stopped on the third step, and asked if she was ready to leave. At that time she heard a noise which sounded like a firecracker, and she saw the deceased grasp the stair rail and fall forward with blood coming from his mouth. She saw a hole in the back of his shirt where he had been shot. She then ran out and stopped a squad car to report the shooting.

Dorothy Terrell further testified that about eight days prior to the shooting she and the deceased had come to the 47th Street apartment looking for her son who had run away from them in the park. When they found him in bed in the apartment, the deceased questioned him about running away; the defendant came out of his room and quarreled with them about chastising the boy, and threatened the deceased with a gun, saying he would "blow his brains out" if he didn't leave. The witness and the deceased then left.

On cross-examination the defense counsel asked the witness whether or not she was living or had lived with

the deceased at 51st and Michigan; an objection was sustained by the court. Counsel then said he wanted to ask her if she had ever lived at that address or if she had ever told anyone she lived with the deceased. The court sustained objections to these questions.

Marguerite Kimble, who rented a room of her apartment to the defendant, corroborated the testimony of Dorothy Terrell. She stated that she had put a second screen over the broken one on defendant's window, and when she had occasion to look at the screen later that night she saw a little hole in it, which was stipulated to be a half inch to an inch in size. She further testified that she knew there had been an argument between the deceased and the defendant about eight or ten days before.

The cause of deceased's death was pronounced by the physician to be a gunshot wound of the right lung.

Terry Tereno, who was also on the porch of the 47th Street apartment on the night in question, testified that he saw the defendant go into his room; that he later saw the deceased come up the stairs as he was going down; that when he was several steps from the porch he heard a cracking sound, looked up and saw the deceased lying on the banister, with blood coming from his mouth.

The police officers testified that they had found a person lying face down on the stairway with a wound in his back, and that they observed the window and the small hole in the screen.

**Testimony of the defendant.**

O. C. Powell testified that he had rented a room on the second floor of the premises in question; that on the evening of July 25, 1965, he was on the porch there. He stated that he had had an argument with the deceased eight or ten days before the occurrence; that when they had come in looking for Dorothy Terrell's son he told them that Marguerite Kimble had said to tell them not to say anything to the boy that night; that the deceased told him he couldn't tell Dorothy what to do, and that they

343

had been looking for the child for some time. They continued arguing, and the deceased said he heard the defendant had a pistol, and that if he thought he did have he would take it and throw him out the window. The defendant testified that at the time he had no pistol in his hand. He stated that he saw the deceased on July 25; that he had gone to bed early and had not stayed on the porch with the others; that he was awakened by a sound at the window and could see the legs of a man standing there; that the man was pulling at the window. He said he went to the window with his gun in his hand and raised the shade, at which time the deceased jumped back and turned, and the defendant shot the gun, hitting the deceased in the back.

On cross-examination the defendant denied that on the evening of July 25, 1965, he sat on the porch with the others, stating that he went to bed about 7:00 p. m. He reiterated that when he was awakened he went to the dresser, got his gun, and went to the window; that he did not know what time it was; that at the time he fired the gun the deceased was right in front of the window; that he had not waited until the deceased was on the stairs. He testified that the distance between the banister and the window would be about four or five feet. The defendant testified that he knew the deceased had no gun in his hand; that nothing was said between them; that when he had opened the shade the deceased turned and he shot him; that "it was during the spirit of the moment and I was excited." He stated that he did not see the deceased fall; that he knew he had shot him in the back, and that he had meant to pull the trigger of the gun.

The defendant stated that as soon as he fired the shot he put on his clothes and went out the front door, taking the gun with him; that he met a man at 31st Street who let him have $3 for the gun, and he then took a cab to his sister's. When asked why he left in such a hurry he said

he got excited; that he didn't know he had killed the deceased, but did know that he was in trouble. He stated that he went to his sister's house and did not call the police, but was waiting to get some money to go to his brother's home in Memphis, Tennessee.

OPINION: The defendant argues that the court committed reversible error when he was not permitted to impeach the witness, Dorothy Terrell, who had testified that she was present when the deceased and the defendant had an argument and that the defendant had threatened the deceased. Defendant's counsel attempted to impeach the witness by showing that she made a statement to the police that she lived with the deceased. The court refused to permit that evidence in the record. The purpose of impeachment could only be to throw doubt upon the statement of Dorothy Terrell as to the original quarrel she testified the defendant had with the deceased and that he had threatened the deceased at that time.

█ If we consider that the court erroneously ruled in excluding the impeaching evidence, nevertheless it was not reversible error, since the defendant admitted having had a quarrel with the deceased, and there was further testimony that there had been an argument between the deceased and the defendant about eight or ten days before.

██ In People v. Armstrong, 22 Ill2d 420, 424, (cited with approval in People v. Helm, 40 Ill2d 39, 237 NE2d 433), the court said:

> "It is not our policy to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error."

The question before a reviewing court is to determine whether the accused has had a fair trial, and whether his conviction is based upon evidence establishing his

guilt beyond a reasonable doubt. People v. Davis, 10 Ill2d 430, 140 NE2d 675. In the instant case the defendant had a fair trial and was properly convicted by evidence establishing his guilt beyond a reasonable doubt.

The cases cited by the defendant are not in point.

In the case before us the defendant fired at the deceased and said he meant to pull the trigger when the deceased was standing unarmed directly in front of his window. Under all the circumstances of the case the ruling of the court refusing to admit the impeaching evidence was not reversible error.

█ The defendant also argues that the court was in error in allowing the State's Attorney to turn over witnesses' statements and police reports in front of the jury. At the time Dorothy Terrell was on the stand on cross-examination, counsel for defendant asked her if she had given a written statement to the police in connection with the investigation, and she said she had. The following colloquy occurred:

> "Mr. Smith [defense attorney]: Your Honor, at this time I would ask leave of Court—
> "The Court: Yes. Do you have a statement? Give it to him.
> "Mr. Oplatka [State's Attorney]: May the record reflect at this time the State is tendering a copy of this statement made by Miss Terrell to counsel.
> "Mr. Smith: May I have a moment to review it?
> "The Court: Sure."

In People v. Bickham, 91 Ill App2d 465, 235 NE2d 400, the defense counsel had demanded a copy of a statement of a witness before the Grand Jury. In the presence of the jury the State's Attorney said he would turn over the exhibit, upon which the attorney for defendant said, "Acknowledge receipt of the same. Thank you, Mr. Nellis." No objection was made by defense. The court held that the giving of the document by the State's Attorney to

346

the defendant in the presence of the jury, under such circumstances, was not reversible error. Nor was the court's ruling in the instant case reversible error.

The defendant had a fair trial and was convicted beyond a reasonable doubt. No reversible error occurred in the trial of the case.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.