**People of the State of Illinois, Plaintiff-Appellee, v. Charles Sanford, Defendant-Appellant.**

**Gen. No. 52,047.**

First District, Third Division.

October 3, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Edward Stasukaitis, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, Charles Sanford, was convicted by a jury of the offenses of murder and arson. He was sentenced to the penitentiary for concurrent terms of not less than fifty nor more than seventy-five years.

He contends that the State committed reversible error in commenting in its closing argument on his failure to produce alibi witnesses and in turning over a police report to his counsel in the presence of the jury. He also con-

tends that the minimum sentence is excessive and should be reduced.

On August 28, 1965, Sanford was living with Ludia Bell Graves and her ten-year-old daughter at 4545 S. Woodlawn Avenue, Chicago. The couple quarreled and Sanford struck Miss Graves in the face. She left her apartment and went to the fourth-floor apartment of Mr. and Mrs. Taylor.

The next afternoon Sanford came looking for her. He inquired at the fourth-floor apartment of John Davenport but was told that she was not there. He then kicked and banged on the Taylors' door (about six feet away). Miss Graves was in the Taylor apartment, but no one answered the door. She heard Sanford say he would burn everyone up when he came back. About 20 minutes later she again heard his voice in the hallway and heard him say, "Ain't any need any of you all running because I'm going to burn all of you . . . up." A fire started in the hall outside of the Taylor apartment.

A resident of the building saw Sanford enter with a gasoline can. She asked where he was going and he answered "to blow up some people." A maintenance man also saw Sanford enter the building carrying a red can marked "gasoline." No one saw him spread the gasoline, but Mrs. John Davenport heard him say to her husband that he was going to burn the place down and saw him throw a match and a flame shoot up. He stayed in the building about ten minutes, then left empty-handed, first walking, then running down the street. After he left some boys yelled fire and the maintenance man called the fire department.

The fire killed John Davenport and injured two others, including Mrs. Davenport, who jumped from a fourth-floor window.

Sanford denied setting the fire. He claimed that on August 29th he looked for his "wife" with whom he had

quarreled the previous day. He asked for her three times at the Davenport apartment but was unable to locate her. On the last effort, about 1:00 p. m., John Davenport told him that she was with her boyfriend. He then decided to have some fun and spent the remainder of the afternoon at a tavern. When he returned to his apartment, he was told of the fire and was arrested.

During Sanford's cross-examination the State elicited the information that the owner and a barmaid were present in the tavern. Neither of these prospective witnesses was called by the defense and in his closing argument, the prosecutor said:

> "He said he was drinking in the tavern, a man and a woman were in there, and he was in there the day before, he doesn't bring anybody in from there."

The defendant contends that this remark was improper because the witnesses were equally accessible to both sides. He cites People v. Smith, 74 Ill App2d 458, 221 NE2d 68 (1966) wherein it was stated:

> "It is now well settled that the failure of a defendant to call as witnesses those persons who are aware of facts material to the question of his guilt or innocence creates no presumption of law that, if the witnesses were called, adverse testimony would result, unless 'it is manifest that it is within the power of the accused to produce such witnesses and that such witnesses are not accessible to the prosecution.' "

In the Smith case the implications in the State's argument were seriously provocative. The case is not comparable to the present one.

The prosecutor did not argue that the defendant failed to call the tavern owner and barmaid as witnesses because their testimony would have been adverse to him. He merely said that they had not been brought in to testify. Further, the witnesses were not equally available

to both sides. There is nothing in the record to indicate that the State knew prior to the defendant's testimony that he would claim an alibi or whom he would name as witnesses to support his story that he was in another place at the time of the crime. The defendant knew who they were and could have had them on hand, the State could not. After the witnesses were named, the trial would have had to be recessed, perhaps to some other day, for the State to have subpoenaed them.

■ ■ The applicable rule is the one stated by this court in People v. Gray, 52 Ill App2d 177, 201 NE2d 756 (1964):

> "Where the defendant injects into the case his activities with potential witnesses during a particular period of time ostensibly for the purpose of establishing an alibi for the time of the commission of the crime charged, his failure to produce such witnesses is a proper subject of comment on the part of the State."

See also People v. Swift, 319 Ill 359, 150 NE 263 (1925); People v. Gray, 57 Ill App2d 221, 206 NE2d 821 (1965); People v. Lenihan, 14 Ill App2d 490, 144 NE2d 803 (1957). The prosecutor's comment on the failure to produce the alibi witnesses was innocuous.

The defendant next contends that the State committed reversible error in turning over a police report to his counsel in the presence of the jury. He claims that he had to use the report or appear to be hiding something from the jury.

■ The defendant fails to note that his counsel asked to see the report. During the cross-examination of a police officer, his counsel asked if the officer had made a report of his investigation. When the officer answered in the affirmative, the attorney asked if he could see it. The prosecutor said he could and gave him the report. As he did, the prosecutor described his action for the purpose of the record.

105

Outside of the prosecutor's designation at the time of transfer, there was no reference by the State to the police report during the trial. The State did not refer to it in examining or cross-examining the witness and did not mention it in its closing argument. Thus, under the circumstances of this case, the defendant suffered no prejudice from receiving the police report in the jury's presence. See People v. Bickham, 91 Ill App2d 465, 235 NE2d 400 (1968).

The defendant's final contention is that the minimum sentence of fifty years is excessive. He contends that a lower minimum sentence would be a greater inducement toward rehabilitation and toward the exercise of the parole board's discretion.

In People v. Valentine, 60 Ill App2d 339, 208 NE2d 595 (1965), this court was asked to reduce the life imprisonment sentence of a leading participant in a particularly brutal rape of an eleven-year-old girl. In that case we said:

> "We believe that the power to reduce sentences should be used with caution and that a sentence imposed by the trial judge, who sees the defendant and is in a far better position to appraise him and to evaluate the likelihood of his rehabilitation than a reviewing court, should not be reduced unless there are substantial reasons for doing so. The penalty decided upon by the trial court, if within statutory limits, should not be changed merely because of judicial clemency or just because the reviewing court would have imposed a different one if it had been in the trial court's position."

Likewise, in People v. Caldwell, 79 Ill App2d 273, 224 NE2d 634 (1967), this court declined to reduce a minimum sentence of fifty years (maximum of one hundred years) of a defendant who killed a woman in cold blood. We held that the sentence imposed was not improper in

106

view of the "nature of the crime and the record before us." Moreover, in Caldwell we noted that all minimum sentences beyond twenty years are reduced to twenty for the purpose of parole eligibility. Ill Rev Stats 1967, c 38, § 123-2(3). Assuming maximum credit for good behavior, a defendant who receives a minimum sentence of twenty years or more becomes eligible for parole in eleven years and three months.

■ This case, like Valentine and Caldwell, is inappropriate for reduction of the sentence. The sentence imposed reflects the serious nature of the crimes of murder and arson and the defendant's criminal record. After several convictions for disorderly conduct and petty larceny he was convicted of burglary and sentenced for three to ten years, of rape and sentenced for five years, and of battery and sentenced for one year. He testified that he was out of prison only forty-six days when he committed the crime of arson which resulted in death and injury to innocent persons. In view of these considerations, the fifty-year minimum sentence was not excessive.

The convictions are affirmed.

Affirmed.

SCHWARTZ and SULLIVAN, JJ., concur.