THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSE MARTINEZ, Defendant-Appellant.

(No. 53716;

First District—April 20, 1972.

Gerald W. Getty, Public Defender, of Chicago, (James J. Doherty and Nunzio Dan Tisci, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Martin Moltz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Jose Martinez was indicted for the murder of Robert Stephens. He waived a jury trial, was found guilty of voluntary manslaughter and sentenced to the penitentiary for 10 to 15 years.

The defendant raises these points on appeal: he was not proven guilty beyond a reasonable doubt, the evidence was insufficient to establish the offense of voluntary manslaughter, and the sentence was excessive.

Stephens died from a shotgun wound inflicted while he was in a parking area adjacent to a tavern in East Chicago Heights. The defendant admitted firing the fatal shot, but he claimed at his trial that he was attempting to defend himself and the gun discharged during a fight.

The killing was preceded by a quarrel inside the tavern between the defendant and Stephens' brother-in-law, Luis Martinez, who bore no relationship to the defendant. Luis testified he struck the defendant in

the face; the defendant said he was hit from behind but he did not know by whom; the proprietor, James Ivey, said he saw no blows struck but there was an argument which he stopped. All agree that the defendant left the tavern and returned later. The defendant, Stephens and Luis were there when Ivey and his wife closed the tavern shortly before 2:00 A.M. Outside the tavern the two Martinezes started talking again. Ivey said it seemed the quarrel might be resumed so he told the defendant and Luis to forget their dispute; they shook hands and went to their cars. Stephens' car was parked nearest to the tavern's door; the defendant's car was farther away. Luis Martinez said there was no further argument; he sat in Stephens' car while Stephens and Ivey said good-bye to each other. The defendant said a quarrel developed and Luis and Stephens began to strike him with their fists.

As Ivey was driving away he heard gunfire. He returned to the tavern and saw Stephens in a prone position right next to his own automobile. A broken shotgun was lying at the corner of the building. Stephens was holding his stomach and cried, "Jim, I've been shot, help me." Luis testified that after hearing a shot he saw Stephens on the ground and the defendant near his car holding a shotgun. He jumped out of Stephens' car, ran to the defendant's auto, struggled with him for the gun, hit him over the head with it, and broke the gun in two by striking it against the building. He then went to aid Stephens. Stephens, bleeding from the stomach, was moaning, "He shot me."

A police officer who arrived on the scene soon after the shooting testified that he found Stephens on the driver's side of his own car which was the side farthest away from the defendant's vehicle. There was evidence of pellet marks on the hood of Stephens' auto which indicated that the pellets came across the hood. He measured the distance between the two autos and they were 50 to 55 feet apart.

Admitted into evidence as a dying declaration was a hospital statement made by Stephens to his wife a few hours before he died:

"Theresa, I going to die. Theresa, I swear in front of God, I didn't have nothing to do, I don't know the guy, the guy have words with your brother, Luis Martinez, I don't know what they were talking about, after that I was shooting pool and then I got shot. I was walking to my car and I just got shot."

According to the defendant's testimony, Luis started arguing with him about the occurrence inside the tavern and blows were exchanged. Stephens got into the fight and both men overpowered him. He got up from the ground, ran to his car and seized a loaded shotgun which he kept under the rear seat. Luis followed him to his car and Stephens was only two to four feet away. During the struggle with Luis for possession

of the gun, it was discharged. The defendant ran to his home a block or two away and told his wife, "I think I killed a man * * * call the police."

He testified that his arm was bruised and his eye and head were cut. His wife testified that he was full of blood. The police officer who, after obtaining information at the scene, went to his home to arrest him, said there were lacerations on his arm, a laceration on the back of his head, and a small scratch above his eye. He told the officer he had been fighting. He was taken to a hospital, treated for his wounds, and then questioned. He said he shot Stephens because Stephens and Luis Martinez were beating him up and he could not get away. A woman who lived across the street from the tavern and who had known the defendant for ten years, corroborated his version of the occurrence. She related that the noise awakened her and she observed the fight through her bedroom window. The trial judge discounted her testimony. During the State's closing argument he commented, "* * * you can pass right by her, I'm not concerned by her testimony whatsoever."

■■ Discrepancies between the testimony of Ivey and Luis Martinez, and the latter's taking the shotgun away from the defendant, form the premise for the defendant's contention that the State's evidence is incredible, "incompatible with the universal experience of mankind," and did not establish his guilt beyond a reasonable doubt. There were discrepancies in the testimony of the prosecution's witnesses but they were unsubstantial. Testimonial discrepancies of a minor character do not destroy the credibility of witnesses but only affect the weight to be accorded their testimony. (*People v. Cooper* (1966), 69 Ill.App.2d 18, 216 N.E.2d 168.) Running up to the armed defendant and taking his gun from him was a brave if rash act. Martinez had just witnessed the shooting of his relative; his impulsive reaction was not contrary to the laws of nature. Furthermore, it did take place. The defendant himself said he ran to his car, obtained his weapon and aimed it, and that Luis Martinez came to the car, grabbed the gun and pulled it from him.

■■ Complaint is made of the prosecutor's argument that the gun was fired from a greater distance than the two to four feet testified to by the defendant. The evidence of Stephens' wound and the pellet marks on the hood of his car supported the inference drawn by the prosecutor that the shot-pattern indicated that Stephens was not killed at close range. Furthermore, there was no objection to the argument.

■■ The defendant argues that he was either guilty of murder or nothing at all. We agree that he could have been found guilty of murder but, depending upon which testimony was believed, the evidence established the offense of voluntary manslaughter as well as that of murder.

Murder is the killing of an individual without lawful justification, if the person who performs the act causing death either intends to kill or do great bodily harm to the individual or knows that his act creates a strong probability of death or great bodily harm. (Ill. Rev. Stat., 1967, ch. 38, par. 9—1.) The testimony of Luis Martinez, the accessibility of the defendant's weapon, the position of Stephens' body, the extent of his wound, the pellet marks on his vehicle and his dying declaration would have justified a finding that the defendant was guilty of murder. Reasonable inference could have been drawn from the evidence that the provoked defendant left the tavern and went to his home to procure his shotgun; that he placed it under the back seat of his car and returned to the tavern with the intention of using it. Likewise, it could be inferred that his first shot was directed at Stephens instead of Luis because, by the time he got hold of his gun, Luis was inside an auto and Stephens was exposed.

■■ Voluntary manslaughter is committed by a person who kills an individual while acting under a sudden and intense passion resulting from serious provocation, or while acting under an unreasonable belief that deadly force is necessary to protect himself from imminent death or great bodily harm. (Ill. Rev. Stat., 1967, ch. 38, par. 9—2(a) (b).) Although the trial court did not specify the provision of the statute under which it found the defendant guilty, the evidence was sufficient to support a finding under either one. The defendant testified that both Luis Martinez and Stephens struck him and knocked him to the ground. His injuries were caused by either the alleged fight or Luis' struggle to disarm him. If the trial court believed some of the injuries were received because of a fight it reasonably could have found that the defendant acted under intense passion provoked by the victim and Luis. If the court thought there was a fight it also could have concluded that the defendant believed his use of deadly force was necessary in his own defense but his belief was unreasonable. Although there is no duty to retreat in the face of a wrongdoer (*People v. Williams* (1965), 56 Ill. App.2d 159, 205 N.E.2d 749), the ease of the defendant's escape from his assailants, the time he had to open the door of his car and take his gun from under the seat, the distance between the two automobiles, and the advantage obtained by the defendant when he possessed a loaded shotgun while his supposed assailants were unarmed, would support the conclusion that he was unreasonable in believing that he had to use such deadly force to defend himself. We affirm the defendant's conviction for voluntary manslaughter.

We find no substantial reason to reduce the 10 to 15 year sentence imposed on the defendant. Although he had no prior criminal conviction

and a good work record, the fact remains that he intentionally killed a man and could have been found guilty of murder—with a required minimum sentence of 14 years.

The judgment is affirmed.

Judgment affirmed.

McGLOON, P. J., and McNAMARA, J., concur.