THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SIDNEY TERRELL, Defendant-Appellant.

(No. 55087; )

First District—August 4, 1972.

942

Gerald W. Getty, Public Defender, of Chicago, (James J. Doherty and Dale W. Broeder, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and James R. Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

A jury found defendant guilty of armed robbery and he was sentenced to a term of ten to twenty years. On appeal he contends: (1) that the court improperly limited a hearing on a motion to suppress identification testimony; (2) that he was not proven guilty beyond a reasonable doubt; (3) that he was deprived of a fair trial by improper remarks of the trial judge and by being forced to accept police reports and grand jury minutes in open view of the jury.

The evidence presented by the State is summarized as follows:

At approximately 9:45 P.M. on December 4, 1969, James Hyman and Albert John Murphy were watching television in the dining room of a house at 2636 West Van Buren Street in Chicago. Quincy Murphy, Jerome Murphy and Gladys Jamison were also in the house. Suddenly there was a commotion at the front door of the house. The door was forced open and four or five armed men entered and came into the dining room which was illuminated by a chandelier. Quincy Murphy, who was asleep, was startled by the noise and came into the dining room in such haste that she forgot her eyeglasses.

Of the four occurrence witnesses who testified, three, James Hyman, Quincy Murphy and Gladys Jamison, made in-court identifications of defendant. Hyman also testified that before the robbery he had seen defendant twice. The fourth occurrence witness, Albert Murphy, could not identify anyone in the courtroom as one of the intruders.

Defendant held the people in the house at bay with a "snubnosed" pistol while the other intruders frisked the occupants and searched the apartment. Gladys Jamison testified that she was awakened from her sleep in an upstairs bedroom and came down to the main floor where defendant removed a diamond ring from her finger. After remaining in the apartment for slightly more than ten minutes, the intruders left by way of a rear door and Gladys Jamison called the police. Shortly after the intruders left, Cap Johnson entered the apartment and gave Hyman the names of "Alan Cage" and "Sidney."

At approximately 10:00 P.M. Police Officers Nickle and Gentile responded to the scene and noticed that the door had been forced open and the interior of the house was in a state of disarray. Detective Coakley and his partner Officer Cozzi responded to the scene at 10:15 P.M. where they found Quincy, Albert and Milton Murphy, Gladys Jamison and James Hyman. The detectives returned to the scene on a later date and separately showed four to six photographs to Hyman, Gladys Jamison, Albert Murphy and Jerome Murphy. Hyman and Gladys Jamison identified a photograph of defendant as being that of one of the intruders.

The testimony of defendant's three witnesses established that defendant had been gainfully employed. Defendant did not testify.

■■ Initially, defendant contends that the court erred in improperly limiting a hearing on defendant's motion to suppress identification testimony. At the outset of the hearing, the court informed defense counsel that a great deal of time would not be spent thereon. The court felt that the motion was frivolous and the testimony of the first witness, Hyman, reaffirmed that belief. Hyman testified that he saw the unmasked robbers at the lighted crime scene for ten to twelve minutes. For approximately eight of those minutes Hyman was looking at defendant. Immediately after the intruders left the scene he mentioned that he knew defendant, whom he had seen three or four times prior to the crime. The court then stopped the hearing and denied defendant's motion. The trial testimony of the other identifying witnesses revealed, as did Hyman's, that at the time of the crime they had a more than ample and uninfluenced opportunity to observe defendant, which established an independent origin for their in-court identification testimony. As pointed out in *People v. House* (1971) (133 Ill.App.2d), 270 N.E.2d 508, 509, and cases there cited,

there is no constitutional error where the courtroom identification is of independent origin. Thus, although the trial judge allowed only a very brief hearing on defendant's motion, the identification testimony was properly admitted.

■■ In contending that he was not proven guilty beyond a reasonable doubt, defendant urges this court to consider numerous factors such as the credibility of various identification witnesses, the fallibility of eye-witness identification, the identifying process, the inability of one of the State's witnesses to identify defendant, the failure of the State to call an occurrence witness and the "mysterious" testimony relating to Cap Johnson's appearance at the crime scene. These matters all relate to the credibility to be attached to the testimony of various witnesses, but it is the function of the trier of facts, not the reviewing court, to make determinations as to credibility. This court will not disturb those determinations or a finding of guilt unless the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt. (*People v. Hampton* (1969), 44 Ill.2d 41, 45, 253 N.E.2d 385, 387.) A review of the evidence presented at the trial of this case demonstrates that defendant was proven guilty beyond a reasonable doubt.

■■ Defendant contends that the jury found him guilty not because of the evidence presented, but because the minds of the jurors were poisoned by remarks of the trial judge. The first remark complained of came within a series of approximately seven defense objections to questions posed by the prosecutor. In one of the resulting exchanges between the court and defense counsel, counsel indicated that he wished to state the grounds for his objection. The court responded, "I know what the grounds for your objection is [sic] * * *. [B]ecause I was a lawyer for thirty years and I did the same thing you are doing." Defendant cites *People v. Thomas* (1958), 15 Ill.2d 344, 349, 155 N.E.2d 16, 19, *cert. denied* (1959), 359 U.S. 1005, and *People v. Riggins* (1956), 8 Ill.2d 78, 85, 132 N.E.2d 519, 522, and contends that these comments prejudiced him in the eyes of the jury. Our review of the record compels us to disagree. Likewise we find no prejudice resulting from the judge's admonitions that a picture, not yet introduced into evidence, should not be shown to the jurors. On appeal, defendant contends that the statement allows the jury to conclude that defendant had prior "brushes" with the police. This contention, weak to begin with, lost its weight altogether when considered with the fact that the photo, which the judge indicated did not look like a "mug shot," was later received into evidence and shown to the jury. Thus, the jury was not left to speculate as to what was depicted in the photo.

Defendant next complains of various comments by the trial judge

wherein he repeatedly attempted to have the witnesses confine their testimony to facts about the defendant and what, "if anything" he did at the crime scene. We find, however, that the judge's remarks were always qualified in order that the jury would not infer that he had an opinion of defendant's guilt.

■■ Defendant also contends that the trial judge invaded the province of the jury by telling them that, "the testimony of all the witnesses proves one thing, that [defendant] worked at the General Foods from October 4th, I think it was that date you said." The context of this comment indicates that it did not invade the province of the jury. The statement came after the defense attempted to introduce testimony of defendant's reputation in his work community. The part pointed out by the judge was the only portion which was not objectionable or stricken. More importantly, in response to defense counsel's request, the court stated to the jury, "I am not expressing an opinion as to the evidence. I am only saying that everything other than the fact that he was an employee from October 3rd until December 4th, I believe is the date, the testimony was. That may stand. Everything else will be stricken. The rest is hearsay. Not admissible."

■■■ Lastly, defendant contends that defense counsel was improperly required to accept police reports and grand jury minutes in open view of the jury. The incident arose out of side-bar conferences, out of the hearing of the jury, where defense counsel asked to see the grand jury minutes and police reports relative to the testimony of Hyman and Jamison. Relying on *People v. Lowe* (1967), 84 Ill.App.2d 435, 228 N.E.2d 563, and *People v. Beard* (1966), 67 Ill.App.2d 83, 214 N.E.2d 577, defendant contends that this procedure forced trial counsel to use the statements to impeach the witnesses or allow the jury to conclude that the documents corroborated the witnesses. While the practice of tendering such documents to defense counsel in the presence of the jury is not looked upon favorably, defendant's right to a fair trial was not substantially affected herein. (*See People v. Scott* (1972), 4 Ill.App.3d 279, 285, 280 N.E.2d 715, 719.) The conferences between counsel and judge relating to the documents took place outside of the hearing of the jury and the State did not argue the question to the jury. *See People v. Sanders* (1969), 110 Ill.App.2d 85, 89, 249 N.E.2d 124, 126.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.