THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUBY LEE ROBINSON, Defendant-Appellant.

(No. 55741;

First District (3rd Division)—August 2, 1973.

James Cutrone, George C. Howard, and Edward M. Genson, all of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Richard Pezzopane, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

Clydette Jones was shot in the heart by the defendant, Ruby Robinson. Robinson was indicted for murder, tried by a jury, found guilty of voluntary manslaughter and sentenced to the reformatory for women for not less than three nor more than ten years.

Robinson shot Jones in a women's clothing store in Chicago, about 11:30 A.M., on June 2, 1968. They had quarreled the previous afternoon and there was bad blood between them. Jones and two of her friends were shopping in the store when Robinson and two companions entered. No words were spoken and the Jones group left first. As they window-shopped outside, Jones said she was going to wait for Robinson to ask about the names Robinson had called her the day before. Most of the witnesses, including Robinson herself, who testified about that quarrel said it was limited to insulting words with the name "bitch" being frequently used; however, Robinson's sister testified that Jones also threatened her sister with bodily harm and death. When Robinson and her friends came out of the store the two women began scuffling. Jones was 22 years old, 5'5" tall and weighed 160 pounds; Robinson was 22 years old, 5'6" tall and weighed 131 pounds.

Jones' friends testified that the fight consisted of wrestling and cussing. Robinson produced a gun and Jones tried to take it from her. Robinson said she would shoot Jones and backed into the store. Jones exclaimed,

"Come on out" and then re-entered the store herself. Robinson again threatened to shoot Jones and then fired at her when she was eight to ten feet away.

One of Robinson's companions testified that the wrestling and hair-pulling continued into the store; she saw Jones shove Robinson through the door and saw Robinson hit Jones with the gun. When Jones came into the store Robinson warned that she would shoot her and fired the fatal shot when their bodies touched.

Robinson said that during the struggle outside Jones bumped her head repeatedly against a glass showcase. She backed into the store, withdrew a gun from her coat pocket and said, "You better not come in here, or else I'll shoot you if you don't leave me alone." Jones followed her into the store and she repeated the threat. Jones kept coming, took some shiny object from a pocket and struck her hand with it, causing a finger to bleed. The object fell to the floor and one of Jones' friends retrieved it. Jones reached for the gun; they struggled for it, it discharged, Jones was shot and fell backwards five to eight feet.

A disinterested witness who was a customer in the store testified that she saw the two women fighting at the front entrance. They were pushing, tugging and using foul language as they came into the store. Each woman said, "Leave me alone." She heard Robinson say, "I'm going to shoot you." They separated and Jones stood motionless near a clothes rack as Robinson renewed her threat to shoot. Robinson aimed the gun and fired at Jones from a distance of ten feet.

Robinson raises these points on appeal: the evidence was insufficient to support a conviction; the evidence of self-defense was not overcome beyond a reasonable doubt; she was not permitted to testify about her fear, motive and intention during the struggle with Jones; the State was allowed to produce a witness' prior statement in the presence of the jury; the jury was not instructed on her theory of the case and the closing argument of the prosecutor was prejudicial.

Voluntary manslaughter is committed by a person who kills an individual while acting under a sudden and intense passion resulting from serious provocation, or while acting under an unreasonable belief that deadly force is necessary to protect herself from imminent death or great bodily harm. Ill. Rev. Stat. 1967, ch. 38, pars. 9—2(a), (b); *People v. Martinez* (1972), 4 Ill.App.3d 1072, 283 N.E.2d 268.

■■ The evidence was sufficient to support the conclusion that Robinson acted unreasonably in taking the life of Clydette Jones. Although there were slight discrepancies in the testimony of the State witnesses, there was an adequate factual basis for the jury's finding, beyond a reasonable doubt, that she was guilty of voluntary manslaughter. According to some

witnesses the fighting stopped before the combatants returned to the store; according to others it continued into the store. All agree that the altercation consisted of nothing more than wrestling, pushing, hair-pulling and name-calling. All agree that Robinson drew out a gun and threatened to use it. No serious battery had been inflicted upon Robinson. Although contradicted by her, the evidence sustains the determination that Jones had no weapon of any kind. While Jones precipitated the encounter by waiting for Robinson to come out of the store and followed her when she retreated into the store, three witnesses, including a disinterested bystander, testified that she was eight to ten feet away when Robinson killed her.

■■ There is no duty to retreat in the face of a wrongdoer (*People v. Martinez; People v. Williams* (1965), 56 Ill.App.2d 159, 205 N.E.2d 749) and Robinson had the right to protect herself, but she had no right to use deadly force in self-defense unless she reasonably believed shooting Jones was necessary to shield herself from great bodily harm or death. Although Jones weighed more than she did and at times was the aggressor, the jury could conclude from the evidence that at the time she shot Jones through the heart Jones was standing still and was a considerable distance away from her, and that she was unreasonable in believing she had to use deadly force in order to defend herself.

■■ The first of the alleged trial errors concerns the ruling of the court in sustaining objections to questions asked the defendant in respect to her intention during the struggle outside the store, her reasons for warning Jones, what she meant by her statements that she would shoot if she were not left alone, and her surprise and feelings when the gun discharged. When material to the issue, an accused should be allowed to testify to his intention, motive or belief. (*People v. Harris* (1956), 8 Ill.2d 431, 134 N..E2d 315.) The questions asked the defendant were relevant and material to the issue of self-defense and she should have been permitted to answer. However, she was allowed to testify later that she was shaky and frightened while she was outside the store, and nervous and scared when she was swung through the door and when Jones charged at her. In response to questions about her intention, Robinson testified that she was trying to scare off Jones, that she was nervous and shocked when they were fighting for the gun, that she did not intend to shoot Jones and did not know she had until she saw smoke coming from the victim's chest. Her mental state, upon seeing that the bullet had struck Jones was that of being shocked. Any error which was committed by the sustaining of objections to earlier questions was cured by her subsequent testimony in respect to her intention, fears and motive.

Another claim of error is founded upon the fact that the State produced

in the presence of the jury a statement made by a witness. After the opening statements and prior to the calling of the first witness for the State, the defendant's counsel asked that the transcript of the grand jury minutes and witnesses' statements be made available to the defense. The trial judge suggested that at the conclusion of a witness' direct testimony counsel could ask if the witness made a statement to police officers or testified before the grand jury; if an affirmative answer was given, counsel would be entitled to the documents.

After one of the State's witnesses testified on direct examination, the defendant's attorney said he would like a copy of her statement to the police and a copy of her grand jury testimony. The judge told him to ask the pertinent questions; the witness answered that she made a statement to the police but did not testify before the grand jury. The attorney requested time to read the statement and the jury was excused.. After the jury left the courtroom, the prosecutor stated for the record that he had furnished the attorney a copy of the witness' two-page statement. The attorney claimed that the State had committed error by handing him the document in the jury's presence. The prosecutor argued that the request for the statement was made in front of the jury and that if he had not complied he would have been put in a position of hiding things. The court declared that under the circumstances there was nothing wrong with the prosecutor's conduct.

■■ The tendering of a witness' statement to opposing counsel in the presence of the jury has been held to be error. (*People v. Lowe* (1967), 84 Ill.App.2d 435, 228 N.E.2d 563; *People v. Beard* (1966), 67 Ill.App.2d 83, 214 N.E.2d 577.) In both *Lowe* and *Beard* the prosecutors, among other things, commented in their closing arguments about the defendants' use of the statements. The conduct in those cases differs greatly from that in the instant case. The representative of the State did not argue that any inferences could be drawn concerning the use or content of the statement. This factor has been considered important in determining whether the error was harmless or affected the result of the case. (See *People v. Terrell* (1972), 6 Ill.App.3d 941, 287 N.E.2d 74; *People v. Scott* (1972), 4 Ill.App.3d 279, 280 N.E.2d 715; *People v. Hall* (1971), 1 Ill. App.3d 949, 275 N.E.2d 196.) Reviewing courts are hesitant in finding reversible error when the production of a police report was occasioned or initiated by defendant's counsel while in the presence of the jury. (See *People v. Poole* (1970), 121 Ill.App.2d 233, 257 N.E.2d 583; *People v. Sanford* (1968), 100 Ill.App.2d 101, 241 N.E.2d 485; *People v. Powell* (1968), 98 Ill.App.2d 340, 240 N.E.2d 787; *People v. Terczak* (1968), 96 Ill.App.2d 373, 238 N.E.2d 626.) We find, under the circumstances of this case, that the production of the statement in response to the defendant's

request did not substantially affect her right to a fair trial and was not reversible error. *People v. Burks* (1969), 105 Ill.App.2d 112, 245 N.E.2d 120; *People v. Bickham* (1968), 91 Ill.App.2d 465, 235 N.E.2d 400.

■■ The defendant claims that the court erred by failing to instruct the jury on her theory of the case. She specifically contends that her instructions pertaining to self-defense were improperly denied because the evidence supported her position that the shooting was necessary to defend herself. A defendant has the right to have the jury instructed on her theory of the case and on the law applicable to any state of facts which the jury might properly find to have been proved. (*People v. Johnson* (1968), 100 Ill.App.2d 13, 241 N.E.2d 584.) Not only were there no objections when many of the tendered instructions were found unacceptable but overlooked is the fact that the refused instructions were repetitious. A court is under no obligation to give more than one instruction on the same subject matter and if an instruction is given which covers the subject as well as the one refused, it is not error to reject the latter. (*People v. Jackson* (1969), 116 Ill.App.2d 304, 253 N.E.2d 527; *People v. Lockett* (1967), 85 Ill.App.2d 410, 229 N.E.2d 386.) The given instruction on self-defense clearly, concisely and impartially stated the applicable law; moreover, it was the pertinent Illinois Pattern Instruction which was required to be given under Rule 451. Ill. Rev. Stat. 1969, ch. 110A, par. 451.

■■ The final alleged trial error relates to two aspects of the prosecutor's closing argument: that he improperly read the indictment to the jury and made prejudicial remarks in requesting a guilty verdict. During the defendant's closing argument, her counsel paraphrased the elements of the first count of the indictment which charged Robinson with murder in that she "intentionally and knowingly shot and killed Clydette Jones with a gun, without lawful justification." In rebuttal, the prosecutor mentioned that counsel read the first count so he, in turn, would read the second count. As he began to do so, the defendant's attorney interrupted; he recalled that the judge had read both counts to the jury before the evidence was presented, and thought another reading would be superfluous. The court remarked that the attorney himself read the first count and asked if an objection was being made to the same treatment of the second count. The attorney stated, "I withdraw my objection"; the remainder of the indictment was then read to the jury. The court did not err in its ruling. It was not improper for the assistant State's attorney to read the indictment in view of the fact that opposing counsel had done the same thing and had withdrawn his objection.

The other alleged instance of prejudicial argument stems from the prosecutor's remarks in requesting the jury to return a guilty verdict.

After stating that the victim's mother asked for a verdict and the general public awaited the jury's verdict, he said:

"\* \* \* if you find that Ruby Lee Robinson was not guilty, did nothing that was not totally proper in shooting down Clydette Jones under those circumstances, no matter what the circumstances were, you will be doing a terrible thing and you will, at that time, be creating an injustice."

An objection followed and it was sustained by the court.

■■ It can be fairly stated that these comments were to some extent in response to the defense attorney's argument to the jurors about their being able to sleep, look their families in the eye, and hold their heads high if they resolved any reasonable doubt in favor of the defendant. A State's attorney has a right to dwell on the evil results of crime and to urge fearless administration of the law. (*People v. Burnett* (1963), 27 Ill.2d 510, 190 N.E.2d 338.) We conclude from both the record and the entire argument that the prosecutor's isolated comments were not of such impropriety as to justify a reversal.

The judgment of the Circuit Court is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.