THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD WILLIAMS, Defendant-Appellant.

First District (2nd Division) No. 83—0604

Opinion filed February 5, 1985.

Thomas Peters, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David C. Kluever, and Joseph R. Barbaro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Richard Williams (defendant) was convicted by a jury in the circuit court of Cook County of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2) and murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)) and was sentenced to concurrent terms of 40 years for murder and an extended term of 40 years for armed robbery. Defendant here contends that the trial court erred in denying his motion to suppress statements and physical evidence and that the sentences imposed were excessive.

At the hearing on defendant's motion to suppress, Detective Minogue testified for the State: he and his partner, Detective Oravetz, were assigned to investigate the February 13, 1982, murder of Mr. Cha, who was found beaten and shot to death in the novelty store he owned in Chicago. On February 24, 1982, Detectives Oravetz and Minogue interviewed Lonnie Reid in connection with the Cha murder. After Reid was given his *Miranda* warnings, he told the detectives that he lived with defendant, defendant's brother and defendant's sister in the first-floor apartment at 6041 South Calumet, in Chicago. A few days before Cha's murder, defendant had told Reid that defendant would like to rob Cha "if the opportunity arose and [defendant]

needed some money." Shortly after Cha's murder, defendant brought to the apartment four bags of merchandise which defendant told Reid had come from Cha's store. Reid stated that the two gold chains Reid was then wearing around his neck were given to him by defendant and that they too came from Cha's store. Reid further advised the detectives that there was a .22 pistol in the apartment "hidden on a shelf near a horse."

The police officers then presented Reid with a "consent to search" form for the apartment he shared with defendant, which Reid signed in their presence. The officers then went to the apartment building and knocked on the door of the apartment located on the first floor left. Ms. Belinda Shenault, defendant's sister, opened the door. After introducing themselves as police officers, Ms. Shenault "allowed" them into the apartment, wherein defendant and his brother were arrested. The gun was recovered from the area designated by Reid, as were various items of merchandise which Minogue stated were similar to the kind of merchandise he had observed in Cha's store. Ms. Shenault assisted the officers in their search for merchandise. At the police station, Minogue read defendant his rights and interrogated him for 30-45 minutes.

Detective O'Callaghan testified for the State: on February 25, 1982, at 9 a.m., he read defendant his rights and interrogated him. After some 30 minutes, O'Callaghan returned to defendant's apartment and recovered several articles of clothing. Returning to the station, O'Callaghan further interrogated defendant for 15 minutes, after which O'Callaghan went to a novelty shop where additional merchandise taken in the Cha robbery was recovered. At 5 p.m. defendant confessed to his participation in the robbery and shooting of Cha.

Assistant State's Attorney John Cooney testified that on February 25, 1982, at 7 p.m., he was present when defendant made a statement regarding the Cha killing; defendant was not beaten or threatened, and did not request an attorney. The State then rested.

The only witness called by defendant on his motion to suppress was Detective Silvestrini. Neither Shenault nor Reid testified. The court denied defendant's motion to suppress, finding that Reid had executed a consent to search form, and that the police had probable cause to arrest defendant.

At trial the State introduced defendant's confession in which he admitted that he and Reid had committed the crimes; evidence that clothing recovered from defendant's apartment contained blood of Mr. Cha's type; and the testimony of the owner of the novelty shop from which items taken in Cha's robbery were recovered affirming that

defendant had sold that merchandise to her.

■ Defendant contends that the search of his apartment and his arrest therein were illegal because the police were without a warrant, and the alleged "consent" to search the apartment was not shown to be voluntary.

The rule in Illinois is that:

> "*** the police cannot enter a person's apartment or home to effect a warrantless arrest based on probable cause alone. There must be factors of exigency justifying prompt police action [citations] or a showing of a consent to enter [citation]." (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 928, 455 N.E.2d 733.)

In the instant case, we believe it clear that the police had probable cause to arrest defendant. Probable cause exists if a reasonable and prudent person in possession of the arresting officer's knowledge would believe that the person arrested had committed a crime. (*People v. Amft* (1982), 109 Ill. App. 3d 619, 440 N.E.2d 924.) Reid's statements that defendant, before the shooting, had expressed a desire to rob Cha and defendant's subsequent action in bringing four bags of merchandise into the apartment which he stated were taken from Cha's store, coupled with Reid's testimony that there was a .22 gun in the apartment established probable cause for defendant's arrest. See, *e.g., People v. Beto* (1980), 86 Ill. App. 3d 622, 408 N.E.2d 293.

■ Probable cause to arrest, alone, however, is not sufficient to justify a warrantless arrest in defendant's apartment; the police must have a consent to search, or there must exist exigent circumstances justifying the police action.[1] The State contends that here the police had the consent of two persons, Reid and Shenault, which justifies their action. It is true that consent need not be given by the defendant himself; it may be obtained from a third party who has control of the premises. (*People v. Bean* (1981), 84 Ill. 2d 64, 417 N.E.2d 608.) Defendant does not deny that Reid and Shenault could give valid consent for the search of the apartment; defendant does, however, contend that the State failed in this case to meet its burden to show that the consent given was voluntary.

■ "In warrantless arrest situations, the standard for valid consent to enter a dwelling which has been applied by the Supreme Court

---

[1]At trial the State did not argue that the warrantless entry was justified by exigent circumstances; it relied solely on consent. The State's motion in this court on the day before oral argument to file an additional argument attempting to justify the police action based on exigent circumstances was denied.

is whether the consent was voluntarily given. (*Schneckloth v. Busta-monte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.)" (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 928.) It is the State's burden to demonstrate that the consent was voluntarily given. "[T]he consent must be proved by clear and positive testimony and it must be established that there was no duress or coercion, actual or implied. The prosecution must show a consent that is unequivocal and specific, freely and intelligently given." (*People v. Wahlen* (1982), 111 Ill. App. 3d 194, 196, 443 N.E.2d 728.) Voluntariness of consent is a question of fact to be determined from all of the surrounding circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.

■ To establish consent here, the State relies on two statements by Detective Minogue at the suppression hearing in which he testified that Reid "agreed" to sign the consent to search form, and in which he testified that Shenault "allowed" them into defendant's apartment. We do not consider these statements to sufficiently establish a voluntary consent by either Reid or Shenault. In denying defendant's motion to suppress, the trial court did not specifically address the issue of the voluntariness of either Reid's or Shenault's consent. We believe, therefore, that it is appropriate to return this case to the trial court for a hearing solely on the issue of the voluntariness of the consent(s) obtained. See *People v. Lucas* (1980), 88 Ill. App. 3d 942, 410 N.E.2d 1040.

Defendant's second contention is that in light of defendant's youth (25 years old), the trial court abused its discretion in imposing a 40-year sentence for murder, and a concurrent extended 40-year term for armed robbery. The evidence introduced at trial showed that when Reid and defendant discussed robbing Cha, Reid stated that it would be necessary to kill Cha because Cha knew Reid and could identify him. During the robbery, Reid and defendant beat and kicked Cha; Reid subsequently shoved a broom handle into Cha's anus several times, and Reid then shot Cha in the head with a single shot from a .22 pistol. Defendant kept some of the robbery proceeds, and sold the remainder for $20. Defendant had a prior conviction for burglary in 1976.

■ The determination of an appropriate sentence is within the trial court's discretion, and will only be modified if a reviewing court determines that the trial court has abused its discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) The trial court here appropriately considered the statutory factors in aggravation and mitigation (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.1 and

1005—5—3.2) and concluded that defendant's conduct caused serious harm, that defendant had a history of prior criminal activity, that the sentence was necessary to deter others, and that the offense was accompanied by exceptional cruelty indicative of wanton cruelty. The sentences, therefore, were within the statutory limits prescribed by the legislature. Nor do we believe that defendant's age or "potential for rehabilitation" require a lesser sentence. It is recognized that all criminal penalties are to be determined according to both the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (See Ill. Rev. Stat. 1981, ch. 38, par. 1001—1—2.) The prime responsibility for striking the proper balance between these considerations rests with the trial court. (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 452 N.E.2d 857.) We do not believe that the trial court abused its discretion in its determination in the instant case, and we therefore decline to modify defendant's sentence.

For the above stated reasons, the judgment of the trial court is vacated and the cause is remanded for a hearing solely on the issue of whether a voluntary consent to the search of defendant's apartment was made. If the trial court determines that a valid consent was given, it shall thereupon reinstate the original judgments.

Vacated and remanded with directions.

HARTMAN and BILANDIC, JJ., concur.