THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD WALKER, Defendant-Appellant.

First District (5th Division)   No. 84—0973

Opinion filed December 16, 1988.

PINCHAM, J., dissenting.

Randolph Stone, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Pat Butler, and James P. Stevenson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by defendant, Gerald Walker, from a conviction and sentence of 12 years for rape. On September 3, 1982, Walker was indicted for deviate sexual assault, aggravated kidnapping and armed violence. On June 9, 1984, after a jury trial, Walker was found guilty of rape and sentenced to 12 years' imprisonment. The victim of the rape, L.S., was the daughter of a Chicago police officer. The sole issue raised on appeal by defendant is whether the police officer's warrantless arrest and subsequent use of evidence, direct and indirect fruits of the arrest and his detention, violated Walker's fifth, sixth, and fourteenth amendment constitutional rights.

On July 18, 1983, Walker filed a motion to suppress his identification, a motion to suppress his arrest without a warrant, and to suppress the evidence obtained after the arrest. The State filed no responsive pleading to the defendant's motions, and he was the only one who testified at the hearing on the motion to suppress. His testimony was to the effect that he was at his parent's home and that he did not see or hear either the victim or her father enter the house of his parents because he was in the bedroom at the time they entered. He

heard someone say "Your son, Gerald, raped me." He then went into the living room of his home where the victim, in the presence of the defendant and her father, a police officer, stated that defendant was the person who raped her. The police officer then arrested defendant and subsequently fingerprinted him and took blood and saliva from him.

The trial court denied defendant's motion to suppress. At the trial the evidence revealed that the victim's father, a Chicago police officer, was called home from his work after the victim returned from the hospital. She told her father she had been raped and that she had seen the offender with a boy she knew as "June" just before her attack. She and her father left to speak with June. June told them defendant was the one whom he had been standing with at the time. June directed the victim and her father to defendant's grandmother's house. There they ascertained defendant's home address.

Upon their arrival at defendant's house, L.S. and her father, who was in uniform, were invited in by defendant's mother. In a subsequent conversation between L.S., her father, and defendant's mother, the defendant came into the room and L.S. stated, "That's the dog who raped me." The police officer, L.S.'s father, then arrested him, took him to the police station, and effected booking procedures and obtained the evidence sought to be suppressed.

Defendant raises two main points on appeal. One, that his arrest, without a warrant, was illegal and thereby bars the evidence obtained thereafter as the fruits of an illegal entry and, two, the failure of the trial court to give the jury a tendered instruction on impeachment by omission was error.

For the following reasons we affirm.

When a voluntary consent is given to enter one's residence and an arrest is made thereafter, based on probable cause, none of the arrestee's constitutional guarantees are violated. (*People v. Bean* (1981), 84 Ill. 2d 64, 417 N.E.2d 608.) That consent need not be given by the arrestee; it may be given by one who controls the premises. *United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988.

The facts in this case disclose that L.S.'s and her father's entry into the apartment was with the consent of defendant's mother. Prior to the entry, the arresting police officer had reason to believe that defendant was the one who raped his daughter, based on the conversation with June. When his daughter confronted defendant after the consensual entry and identified him as the party who raped her, there were reasonable grounds to arrest defendant. Although the

State presented no evidence at the hearing on the motion to suppress, in reviewing the propriety of a motion to suppress or quash an arrest, an appellate court may consider the entire record and is not confined to only that evidence presented during the pretrial motion. (*People v. Cole* (1988), 170 Ill. App. 3d 912, 524 N.E.2d 926.) A pretrial ruling on a motion to suppress is procedural rather than substantive and is required of a defendant simply to avoid extended collateral inquiries at trial. *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223.

It appears that the State raised the question of a consensual arrest for the first time on appeal. A prevailing party may raise, in support of a judgment, any reason appearing in the record (*People v. Sloan* (1986), 111 Ill. 2d 517, 490 N.E.2d 1260), although this rule does not apply when the new theory is inconsistent with the position adopted below or the party has acquiesced in contrary findings (*People v. Franklin* (1987), 115 Ill. 2d 328, 504 N.E.2d 80). The record in the court below disclosed that the initial hearing revolved around probable cause to arrest rather than the consensual nature of the entry. The State did not argue in the trial court a theory inconsistent with its position in this court. Therefore, we find no basis in the record to reverse the trial court's denial of defendant's motion to suppress even though the consent issue was first argued on appeal.

■ As his final point, Walker urges the court to find error in the trial court's refusal to give the following tendered instructions:

"The omission of a witness to state a particular fact under circumstances rendering it likely that he would state that fact, if true, may be shown to discredit his testimony as to such fact.

It is a general principle of evidence that the failure to assert a fact when it would have been natural to assert it, amounts in effect to the assertion of the nonexistence of the fact."

These two instructions have some foundation in the law of evidence even though they are not covered by the court's standard instructions. Defendant bases his claim of error on this point on the fact that the victim stated that her offender had a chipped tooth and bore ears that stuck out. Two other police officers and her father testified that the victim did not describe these characteristics. There were other alleged discrepancies in L.S.'s testimony and that of the police as to what direction the defendant went after the attack and whom she went with when they went to talk to June, in addition to other alleged discrepancies.

These tendered non-Illinois Pattern Jury Instructions (IPI) instructions went to details of the events described by the victim and the police officer, her father, subsequent to her rape. The evidence as

to her rape by defendant with a gun at her throat was clear and convincing. The trial court did submit to the jury the IPI criminal instructions covering inconsistent prior statements and the weight factor to be given same and the general duty to assign weight and credibility. It has been held not to be error in a criminal case to refuse a tendered instruction which accurately states the law applicable to a case if that principle has been covered correctly and sufficiently by another instruction. *People v. Smith* (1978), 67 Ill. App. 3d 672, 385 N.E.2d 44.

In this case the trial court adequately instructed the jury on impeachment by giving the IPI instructions on the point, and its refusal to give defendant-tendered instructions to the effect of the victim's failure to state a fact was not, under the circumstances and facts of this case, error justifying the overturning of the jury's verdict.

Accordingly, we affirm defendant's conviction and sentence.

Affirmed.

LORENZ, P.J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. What's good for the goose is good for the gander. The cases are legion which hold that a defendant who fails to raise an issue and obtain a ruling thereon in the trial court or who fails to present an issue on his motion for a new trial waives the issue and cannot raise or rely on such issue for the first time on appeal. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739.) In *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, the supreme court stated, "The failure of counsel to object at trial waives those errors which the court can correct by sustaining an objection and admonishing the jury. Otherwise, counsel, by not giving the court the opportunity to prevent or correct error at trial, will gain the advantage of obtaining a reversal through his own failure to act, either intentionally or inadvertently." In *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227, the supreme court pointed out that "the question of denial of effective assistance of counsel was first raised in the appellate court and that at no time did either of the defendants raise this issue in the trial court." The court concluded that "the general rule is that the failure by a defendant to raise an issue in the written motion constitutes a waiver and the issue cannot be urged as a ground for reversal on review. This waiver rule applies to constitutional as well as to other issues." (73 Ill. 2d at 16.) The *Precup* court

further concluded that "the issue was not raised by the defendants during the trial and was not called to the court's attention in the motion for a new trial. Under the well-established law of this State, the question has been waived and cannot be raised for the first time on review." 73 Ill. 2d at 19.

These foregoing objection and waiver principles are also applicable to the State. In *People v. Holloway* (1981), 86 Ill. 2d 78, 91-92, 426 N.E.2d 871, the supreme court pointed out and held, "We turn next to the question of whether the State has waived its right to challenge the standing of defendant Moore. The State made no objection when counsel for defendant Moore orally joined in defendant Holloway's motion to suppress. *** Issues not raised in the trial court are generally considered waived on appeal. [Citation.] *The principle of waiver applies to the State as well as the defendant in a criminal case. ***.* As noted in *McAdrian* [*People v. McAdrian* (1972), 52 Ill. 2d 250, 254], one of the basic considerations supporting the rule preventing a party from raising issues for the first time on appeal is that '[*t*]*he failure to urge a particular theory before the trial court will often cause the opposing party to refrain from presenting available pertinent rebuttal evidence' which could have a bearing on the disposition of the question.* [Citations.] Consequently, we hold that the State has waived its right to challenge the standing of defendant Moore." (Emphasis added.) These principles pronounced in *Holloway*, that the State cannot raise an issue for the first time on appeal and that issues not raised by the State in the trial court are considered waived on appeal, were cited and relied on in *People v. Weber* (1981), 98 Ill. App. 3d 631, 633, 424 N.E.2d 874, and *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 501-02, 448 N.E.2d 620.

Although clearly applicable to the State, the majority has not applied these principles to the State in the case at bar. The majority's reliance on the arresting officers' specious consensual entry into the defendant's home was not raised by the State or ruled on in the trial court and is raised by the State for the first time on the instant appeal. This is clearly erroneous, grossly unfair and it is not in accord with, but rather directly contradicts, the foregoing authorities and the more recent decision of the supreme court in *People v. Franklin* (1987), 115 Ill. 2d 328, 504 N.E.2d 80.

The defendant's motion to quash his arrest and suppress evidence was filed on July 18, 1983. The motion alleged that the defendant was arrested in his home on July 4, 1982, without a warrant, in violation of his constitutional right to be secure in his person and home from unreasonable search and seizure. The motion further alleged that dur-

ing his "arrest and subsequent detention, the police and prosecution became aware of the existence of physical evidence, witnesses and other evidence all the direct and indirect fruits of the arrest and detention." The motion prayed that his arrest be quashed and that the evidence derived therefrom be suppressed.

The defendant also filed on July 18, 1983, a motion to suppress identification. This motion too alleged that the defendant was arrested without a warrant in his home on July 4, 1982, that he was there identified as an alleged rape offender, and that admission of evidence thereof at his trial was and would be violative of the defendant's fifth, sixth, and fourteenth amendment constitutional rights. This motion prayed that this identification of the defendant be suppressed.

The State did not file any responsive pleadings or answer either to the defendant's motion to quash his arrest and suppress the evidence derived therefrom or to the defendant's motion to suppress his identification. Both of the defendant's motions came on and were consolidated for an evidentiary hearing on September 30, 1983, 2½ months after the motions were initially filed on July 18, 1983. The State did not call a single witness on the evidentiary hearing of the motions.

The defendant was the only witness who testified on the evidentiary hearing of the motions to quash and suppress and his testimony was uncontroverted. He testified on direct examination that on July 4, 1982, between the hours of 11 p.m. and midnight, he was with his parents and siblings at their home at 6820 South Aberdeen Street, when and where he was arrested by a uniformed police officer. The defendant testified that the officer did not show him a warrant for his arrest. The assistant State's Attorney then stipulated that the officer had no process for the defendant's arrest or for the officer's entry into the defendant's home. Thereupon, the defendant further testified that he was in his bedroom and when he heard a girl say to his mother, "Your son, Gerald, raped me," the defendant jumped up, put on his robe and came out of his bedroom. The defendant did not know who the girl was. She told the officer that the defendant had raped her. The officer placed the defendant under arrest and took him from his home to a police station, where he was booked, fingerprinted and his blood and saliva were taken, without his consent.

The defendant testified on cross-examination that he did not see or hear the officer come into his home and that he was in his bedroom when the officer entered his home. The defendant related that he knew a policeman was in the house before he came out of his bedroom

and that no one called him out of his bedroom. When asked how did he know to come out of his bedroom, the defendant responded that he heard the girl say, "Your son, Gerald, raped me," and he jumped up, put on his robe and came out. He then saw a girl whom he did not know and who was with a uniformed policeman and who said that the defendant was the person who had raped her.

The defendant rested on the motion to quash and suppress and, as stated, the State chose not to present any evidence or witnesses. The assistant State's Attorney made a motion "for a directed finding" and stated:

> "Your Honor, the defense case in its best light shows that without any evidence concerning the nature of the cause of the presence of the policeman. We have [a] uniformed policeman and the crime victim present. The victim points out the offender to the policeman ***. He has not sustained his burden, and I move that his motion be denied."

At no time in the trial court did the assistant State's Attorney raise, rely on or even discuss consensual entry as the authority for the officer's entry into the defendant's home without probable cause and without a warrant. The assistant State's Attorney argued to the trial court, quite erroneously, that because the defendant did not establish the circumstances of the officer's entry into his home, the defendant did not "sustain his burden." The assistant State's Attorney made absolutely no effort to justify or authorize by evidence or argument the officer's entry into or presence in the defendant's home.

In response and opposition to the assistant State's Attorney's foregoing argument to the trial court to deny the defendant's motion to quash and suppress, the defendant's attorney pointed out to the trial court that, "He's [the police officer's] there in the house." The trial court responded, "It was not said who brought who in or how they happen[ed] to be there." The defendant's attorney thereupon requested, "May I ask leave then to reopen?" The assistant State's Attorney objected, and the trial court responded to the defense attorney's request, "Well, no. I don't think it could change the circumstances here appreciably anyway ***." "We'll assume that it was as you have suggested." Thus, when the defendant's attorney sought to establish the circumstances of the officer's entry into the defendant's home, which the State concedes before this court was not the defendant's burden, he was precluded from so doing by the prosecutor's objection and the trial court's ruling that "it could [not] change the circumstances here appreciably anyway." "We'll assume

that it was as you have suggested." Thereupon, the trial court ruled on the motions to quash the defendant's arrest and suppress as follows:

> "Well, the court is [at] somewhat of a disadvantage in that *it has not been established how the people came together in this premises. However, from what has been heard, it appears that the victim* of the rape on July 3rd or July 4th *somehow or other entered the home of the defendant with a police officer* and accused the defendant of a forceable felony, and that would establish probable cause for the arrest. \*\*\* I'm assuming further that the criminal acts and the arrest were close in time, within less than a 24-hour period; and for those reasons the motions are denied." (Emphasis added.)

Thus, regarding the officer's entry, the trial court simply stated or found that *"the victim \*\*\* somehow or other entered the home of the defendant with a police officer."* (Emphasis added.) From the foregoing it is undeniably apparent that the assistant State's Attorney, and the trial court as well, were really unconcerned with the method via which the officer gained admission into the defendant's home in ruling on the defendant's motion to quash and suppress, and more importantly, denied the defendant's request and would not permit him to establish by his presentation of further evidence the circumstances of the officer's entry even though it was not the defendant's burden.

The defendant urges that the trial court's denial of the motions was erroneous and I agree (and so does the majority for that matter). The fourth amendment to the Constitution of the United States provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., amend. IV.)

Article I, section 6, of the Constitution of the State of Illinois similarly provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, §6.

The assistant State's Attorney conceded and stipulated at the hearing of the motions to quash and suppress in the case at bar that the officer did not have a warrant which authorized him to arrest the defendant or to enter into the defendant's home. In *Johnson v. United States* (1948), 333 U.S. 10, 14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369, the Supreme Court of the United States proclaimed:

"The right of officers to thrust themselves into a home is *** a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman ***."

In *United States v. Davis* (5th Cir. 1970), 423 F.2d 974, 977, the court emphatically stated:

"A person's home holds a favored position in the list of those areas which are protected from unreasonable searches and seizures. *** *The high degree of judicial sanctity which the courts have accorded to dwellings is based upon the concept of privacy and the right to be left alone. The security of homes should not be left to the sole discretion of police officers.* The decisions have repeatedly stressed and emphasized the concept that the underlying purpose of the Fourth Amendment is to protect and shield citizens from unwarranted intrusions into their private domains." (Emphasis added.)

The Illinois Supreme Court in *People v. Abrams* (1971), 48 Ill. 2d 446, 451, 271 N.E.2d 37, declared that "[t]he fourth amendment is intended to guard the privacy of a person in his home *** from wrongful intrusions."

In *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, Federal agents, while investigating violations of the Federal narcotics law, without a warrant entered the laundry and residential premises of James Wah Toy and chased him into his bedroom, in which narcotics were discovered and seized and also in which Toy made incriminating statements that Toy sought to have suppressed. The Supreme Court of the United States held that the agents' entry into Toy's laundry-residence was an unlawful intrusion and that Toy's statements to the agents arose out of and were the product of the agents' unlawful entry and therefore should have been suppressed.

In the case at bar, the defendant was arrested inside his home by an officer who admittedly possessed no warrant that authorized the defendant's arrest or the officer's entry into the defendant's home.

Only the defendant testified at the evidentiary hearing of the motions. Although the State had ample notice of the issues it would be called upon to meet on the hearing of the motions, namely, *inter alia*, the officer's lack of authority for entering the defendant's home, the State nevertheless offered no evidence to establish that the officer's entry into the defendant's residence was lawful, nor did the State offer any explanation for not doing so. The officer's warrantless entry into and his arrest of the defendant in the defendant's home were clear violations of the defendant's constitutional rights to be secure in his person and home against unreasonable search and seizure. *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *People v. Olson* (1983), 112 Ill. App. 3d 20, 444 N.E.2d 1147; *People v. Wormack* (1980), 91 Ill. App. 3d 169, 414 N.E.2d 177; *People v. Boehm* (1980), 89 Ill. App. 3d 176, 411 N.E.2d 1192; *People v. Rembert* (1980), 89 Ill. App. 3d 371, 411 N.E.2d 996; *People v. Wilson* (1980), 86 Ill. App. 3d 637, 408 N.E.2d 988.

In *Payton*, two eyewitnesses identified Payton as the killer and one of them provided Payton's address. Reddick, the defendant in the companion case to *Payton*, was also identified by the robbery victim as the robber and the police also learned his address. The officers' entries into the residences of Payton and Reddick were without warrants. Evidence seized as a result of each entry was sought to be suppressed. The Supreme Court held that "the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment [citation], prohibits the police from making a warrantless and nonconsensual entry into a suspect's house in order to make a routine felony arrest." *Payton*, 445 U.S. at 576, 63 L. Ed. 2d at 644, 100 S. Ct. at 1374-75.

The People's brief in this cause in this court points out that "defendant argues that the People should have presented evidence at the motion to suppress hearing proving that the arresting officer's entry into defendant's home was legal." In their brief in this court, the People candidly and necessarily concede the validity and accuracy of the defendant's argument, wherein the People repeatedly state:

"It is well settled in Illinois that once it is established in a motion to suppress hearing that an arresting officer did not possess a warrant upon entry into defendant's home, *the People must show that the arresting officer had probable cause and either consent or exigent circumstances.*" (Emphasis added.)

The People's brief in the instant cause before this court additionally confesses:

"The trial court also commented that '*it did not know how*

*the victim, the police officer came together in the premises \*\*\*.'*
* * *

In a hearing in a motion to suppress where it is stipulated that the arresting officer did not possess a warrant, the People bear the burden of proving that the arresting officer had probable cause, that is, sufficient knowledge to warrant a man of reasonable caution to believe that an offense had been committed and that defendant had committed the offense.
* * *

*The rule in Illinois governing the warrantless arrest of an individual in his home requires in addition to showing probable cause, that the People show either that the police had consent to enter the home or that exigent circumstances justified the police acting without a warrant.*
* * *

\*\*\* *[T]he facts behind the victim's and the police officer's entry into defendant's home were not presented at the suppression hearing* \*\*\*.
* * *

\*\*\* [A]t the suppression hearing defendant could not testify as to the circumstances of the arresting officer's entry into the home because defendant did not see nor hear the entry. However, the People stipulated that the officer had no warrant. Thus, *the people were then required to show that the officer had probable cause and that he either made a consensual entry or entered under exigent circumstances.*
* * *

\*\*\* *[T]he warrantless arrest of defendant in his home requires more than mere probable cause. There must also be a showing of consent for the entry into the home or alternatively that exigent circumstances existed.*" (Emphasis added.)

Before this court, the People do not and indeed they cannot contend that the victim's identification of the defendant as her assailant to her officer-father in the defendant's home after their warrantless entry operated back as adequate preentry authority for their entry, which was made before the identification.

The evidentiary hearing of the defendant's motion to quash his arrest and suppress evidence established without contradiction or dispute that inside the residence L.S. and her father, in police uniform, talked to a lady. The defendant, age 16, was not present in the room in which they talked. The defendant was in his bedroom. Before L.S. saw the defendant, before L.S. knew that the defendant was present

in the home, without L.S. having identified the defendant, and in the absence of any evidence which established to L.S. that the defendant was the son of the lady to whom she was talking, L.S. stated to the lady, with clairvoyant precision, "Your son, Gerald, raped me." When the defendant heard L.S. state this to his mother, the defendant put his robe on and went into the room where his mother, L.S. and her officer-father were talking. L.S. identified the defendant as her attacker to her father, who placed the defendant under arrest and took him to the police station.

In the trial court in the case at bar, the People did not raise or rely on a consensual entry to validate the officer's warrantless entry into the defendant's residence, nor did the trial court rely or rule thereon in denying the defendant's motion to quash his arrest and suppress evidence. In the trial court the People contended that the defendant failed to establish the circumstances of the officer's warrantless entry into his home and the defendant therefore failed to sustain his burden, which contention the People readily concede before this court was erroneous. Conversely, before this court, the People raise and rely on a consensual entry as authority for the officer's warrantless entry without probable cause for the first time before this court, and, again, for the first time before this court the People further urge this court to rely on the entire trial record and determine therefrom that the officer's entry was consensual.

The supreme court recently denounced the State's reliance on a position on review different from the position on which the State relied in the trial court to sustain the validity of the defendant's arrest and the admission of the defendant's confession into evidence in *People v. Franklin* (1987), 115 Ill. 2d 328, 504 N.E.2d 80. The supreme court pointed out in *Franklin* that such a tactic by the State unjustly denied the defendant his right to refute by evidence and develop a factual record in the trial court in opposition to the State's belated new contention raised for the first time in the appellate court.

In *Franklin*, three days after the deceased's murder, the defendant Franklin, who was a friend of the deceased, spoke to two police officers on the street about the murder. The defendant went with the officers to the police station, where the defendant was questioned and agreed to return to the station the following day to take a polygraph examination. The defendant did not appear to take the test and the officers went to the home of the defendant, who offered several excuses for not appearing for the test. The defendant again accompanied the officers to the police station, where another polygraph appointment was made for the next morning. The defendant remained

in the police station overnight, either at the officers' request or order, and the defendant was then given the test. The defendant was told that the test results indicated that he had not been truthful with the officers and the defendant was given *Miranda* warnings. Later the defendant orally implicated himself in the deceased's murder and he subsequently gave a written confession to the crime.

Franklin moved the trial court to quash his arrest and suppress his subsequent statements. The trial court held that the defendant voluntarily stayed overnight at the police station and that he also voluntarily took the polygraph examination and denied the defendant's motion to quash and suppress. The appellate court in an unpublished order (130 Ill. App. 3d 1160, 493 N.E.2d 755) affirmed the trial court's ruling, but in so doing the appellate court relied on a basis different than that on which the trial court relied. The appellate court found that the defendant's detention began when the officers told him to say at the police station overnight and that the defendant's arrest was without probable cause, but that under *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, the defendant's oral inculpatory statement and subsequent written confession were sufficiently distinct from his illegal arrest to be free from the initial taint of his illegal arrest, and that the police misconduct was not flagrantly abusive.

The supreme court granted Franklin's petition for leave to appeal, and the State contended, in the supreme court, differently from the State's trial court contention, that the defendant's detention "was supported by probable cause to believe either that he committed the murder or that he was guilty of obstruction of justice \* \* \* on the gradually changing answers the defendant gave to questions concerning the last time he saw the murder victim alive." *People v. Franklin* (1987), 115 Ill. 2d 328, 336.

In reversing the appellate court in *Franklin*, the supreme court concluded that no circumstance intervened to alleviate the taint of the defendant's unlawful detention, that the several *Miranda* warnings to the defendant did not purge the taint of the illegal detention, that the constitutional violation in the case was not merely technical and that the defendant's inculpatory statements should have been suppressed as the fruits of an illegal arrest. In so ruling, the supreme court commented on the State's reliance on different contentions in different courts as follows:

> "The general rule that a prevailing party may raise, in support of a judgment, any reason appearing in the record does not apply when the theory is inconsistent with the position

adopted below or the party has acquiesced in contrary findings. [Citations.] *We believe that in this case the State's probable-cause argument comes too late,* for it directly conflicts with the State's theory at the pretrial hearing. \*\*\* *Furthermore, the defendant did not have an opportunity to develop a factual record in opposition to the new theory."* (Emphasis added.) *People v. Franklin* (1987), 115 Ill. 2d 328, 336.

In the case at bar, the State contended in the trial court that the defendant did not meet his burden on the hearing of the motion to quash his arrest and suppress his identification. Conversely, before this court the State admits that the defendant met his burden and concedes that the State was required to go forward and establish a consensual entry as authority for the officer's entry without a warrant or probable cause into the defendant's residence. "[T]he State's probable-cause [and consensual entry] argument[s] come[ ] too late," and *the defendant has not had "an opportunity to develop a factual record in opposition to the new theory."* (Emphasis added.) 115 Ill. 2d at 336.

The evidence presented at trial on which the State belatedly relies for the first time before this court to validate the officer's entry into the defendant's home without probable cause or a warrant and the trial court's ruling thereon reflect that on July 3, 1982, at about 5 p.m., as the 15-year-old victim, L.S., walked from her grandmother's house through an alley en route to her home on the south side of Chicago, she saw a boy she knew by the name of "June" with another boy. She did not say anything to either of the boys when she passed them. As she proceeded through the alley she was grabbed by the arm from behind by a male who put a gun to her throat and told her if she screamed he would kill her. The male walked down the alley to a fence, where he forced her to perform oral copulation upon him. Thereafter, the male took her to the front of a garage where, with the gun at her throat, he forced her to have sexual intercourse with him and then fled.

L.S. returned to her grandmother's house and the police were summoned. She testified at trial that upon the officers' arrival she told them that her assailant had a chipped tooth and ears that "stuck out." These officers conversely testified, however, that L.S. did not give them such a description of her assailant. L.S. was taken to a hospital where she was examined by a physician and again interviewed by other police officers. L.S. testified that she also told these officers at the hospital that her assailant had a chipped tooth and prominent ears, but these officers likewise denied that L.S. gave them any such

description of her attacker. L.S. arrived home from the hospital about 10:45 p.m.

L.S.'s father, a Chicago police officer, arrived at home about 11:30 p.m. and L.S. told him what had happened to her and that her assailant was the man that she had seen earlier that day with June. L.S.'s father at trial likewise testified that L.S. did not describe her assailant to him as having a chipped tooth or ears which stuck out or up.

L.S. and her father went to June's house, where they spoke with June. L.S. told June that the boy she had seen him with earlier when she passed them was the boy who had attacked her. L.S. denied that she told June that the boy's name was Michael. At trial, L.S. testified, on cross-examination:

"Q. [L.S.], did you, while in the presence of your father and in the home of June, say to June, June you know the guy, it was the guy you were talking to. It was Michael. Did you make that statement?

A. No."

June, whose name was Cleveland Hopson, a defense witness at trial, contrarily testified, however, that when L.S. and her father came to his home and L.S. stated that the person she had seen him with earlier was the person who had attacked her, L.S. then said that the name of that person was Michael and that June knew him. June testified on direct examination:

"Q. What did she say?

A. She said, June, do you know the guy. The guy you was talking to, right in front of your house. She said his name was Michael. Michael? I said I don't know a guy by the name of Michael. I wasn't talking to nobody named Michael today."

June similarly testified on cross-examination by the assistant State's Attorney:

"Q. Now, when you say that [L.S.] and her father came to your house, [L.S.] said to you, you know the guy, the guy that was with you, the guy you were standing with talking on the corner, you know the guy, Michael. That's what she told you, right?

A. Right."

June further related at trial that he had been visited earlier by two police officers who also asked him who Michael was and June told them that he did not know. June told L.S. and her father that the person with whom he had earlier spoken that afternoon was named Gerald Walker and where Gerald Walker's cousin lived. L.S. and her father went to that location and there they spoke to "the grand-

mother," after which they went to 6820 South Aberdeen and arrived there about 11:30 p.m. or midnight.

L.S.'s father was in his Chicago police department uniform. He knocked on the door and identified himself. A lady answered the knock and L.S. and her father, without a warrant or any legal process, entered the residence.

As before stated, the defendant has not been afforded an opportunity in the trial court to contest or controvert the People's belated consensual entry contention.

In addition to the above and foregoing, the People's belated contention initially raised before this court and the majority's *ab initio*, *sua sponte* finding that the trial evidence established that the officer's entry into the defendant's home was consensual are unpersuasive, for several reasons. First, as stated, the validity of the officer's entry or whether the officer's entry was consensual was not a trial issue at trial on the question of the defendant's innocence or guilt and the defendant was not afforded an opportunity to contest, refute or dispute evidence of the officer's entry by consent or to present contrary evidence. Second, the State did not contend in the trial court and the trial court made no finding that the officer's entry was consensual. It is therefore most inappropriate for this court to make an *ab initio* or *sua sponte* determination of this crucial issue on the state of the record before us. Third, the State waived its opportunity on the evidentiary hearing of the pretrial motions to quash and suppress to establish a consensual entry by the officer, even though the State was well notified, far in advance of the evidentiary hearing, that the State would be required on said hearing to evidentially justify and validate the officer's entry into the defendant's home without a warrant. The State made no effort to do so, did not request a postponement in order to do so and failed to argue, present or even raise the issue of consensual entry in the trial court.

It cannot be justifiably concluded, as the State urges, that the uniformed officer's entry into the defendant's home at about the midnight hour was consensual from the following testimony of the defendant's mother, who was a trial witness for the defendant:

"Q. Did they [the officer and his daughter, the victim, L.S.] come inside your home?

A. Yes, they did.

Q. Did you let them in?

A. Yes, I did."

Moreover, the conclusory and possibly controvertible testimony of the police officer that, "I was let inside by the mother," which testimony

has not been tested by cross-examination, does not establish a knowing, intelligent and intentional waiver of the fundamental and basic constitutional right to be secure in one's home against an unreasonable entry and/or a volunteered consensual entry.

*People v. Williams* (1985), 130 Ill. App. 3d 758, 474 N.E.2d 1330, on which the State mistakenly relies, is more accurately an authority for the contentions the defendant herein urges. In *Williams*, the evidence presented at the hearing of the motion to suppress established the following. The deceased was found beaten and shot to death in his novelty store. Police officers interviewed Lonnie Reid in connection with the murder. Reid told the officers that he shared the first-floor apartment at 6041 South Calumet Street with the defendant and the defendant's siblings, that a few days before the murder the defendant had told Reid that he needed some money and that he would like to rob the deceased "if the opportunity arose," that shortly after the deceased's murder, defendant brought to the apartment four bags of articles which defendant told Reid came from the deceased's store, that the two gold chains Reid was then wearing were given to him by defendant and that they too came from the deceased's store, and that there was a .22 caliber pistol hidden on a shelf in the apartment. Reid signed a consent to search form for the apartment he shared with the defendant. The officers were admitted by the defendant's sister into the apartment, in which the officers arrested the defendant and recovered the gun described by Reid and merchandise similar to that taken from the deceased's store. The trial court denied the defendant's motion to suppress, "finding that Reid had executed a consent to search form, and the police had probable cause to arrest defendant." (130 Ill. App. 3d at 760.) The trial court did not, however, address the voluntariness of the consent and the cause was remanded "to the trial court for a hearing solely on the issue of the voluntariness of the consent(s) obtained." (130 Ill. App. 3d at 762.) The following language of the court in *Williams* is indeed applicable to the case at bar:

> "*Probable cause to arrest, alone, however, is not sufficient to justify a warrantless arrest in defendant's apartment*; the police must have a consent to search, or there must exist exigent circumstances justifying the police action.
> 
> \* \* \*
> 
> 'In warrantless arrest situations, the standard for valid consent to enter a dwelling which has been applied by the Supreme Court is whether the consent was voluntarily given. [Citation.]' [Citation.] *It is the State's burden to demonstrate that*

*the consent was voluntarily given. '[T]he consent must be proved by clear and positive testimony and it must be established that there was no duress or coercion, actual or implied. The prosecutor must show a consent that is unequivocal and specific, freely and intelligently given.'* [Citation.]" (Emphasis added.) *People v. Williams* (1985), 130 Ill. App. 3d 758, 761-62.

The case on which the majority relies as authority that the trial evidence established that the officer's entry into the defendant's home was consensual, *People v. Bean* (1981), 84 Ill. 2d 64, 417 N.E.2d 608, is not applicable or analogous to the case at bar. In *Bean*, the testimony of the defendant's mother and the arresting officers was presented on the evidentiary hearing of the motion to suppress and the supreme court aptly pointed out: "According to Mrs. Bean's own testimony, upon the officers identifying themselves and asking to see Jimmy Bean, Mrs. Bean invited them to come inside the apartment. The officers then waited until Mrs. Bean returned with her robe. The testimony of all parties established that Mrs. Bean voluntarily invited the officers into the apartment," in which the officers arrested the defendant. (*People v. Bean* (1981), 84 Ill. 2d 64, 70.) Thus, in *Bean*, unlike in the case at bar, the consensual entry issue was properly raised and evidence in support thereof was properly presented on the hearing of the motion to suppress in the trial court and it was not raised for the first time on appeal.

The People feebly and unpersuasively argue before this court that, even though no evidence was presented on the hearing of the motion to quash and suppress to establish that exigent circumstances existed to validate the officer's entry into the defendant's home, such evidence was presented during the course of the trial. This argument is untenable and unacceptable. The trial evidence also established that the officer did not know and did not discover that the defendant was in his home, and the defendant was not identified as the victim's assailant to the officer until after the officer's entry therein. The supreme court's decision in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, condemns the officer's warrantless midnight entry, 6½ hours after the incident, into the defendant's residence as constitutionally invalid.

In *Abney*, it was established on the hearing of the motion to suppress that the officers were told by the beating victim an hour and a half after the beating that the defendant had beaten the victim, with an iron bar and a nine-millimeter pistol near the defendant's home. The victim gave the officers the defendant's name and address and told the officers that the defendant went in the direction of his home

after the beating. The officers went immediately to the defendant's home and arrived there about 6:30 p.m., "only 1½ hours after the assault had occurred." (81 Ill. 2d at 172.) When the door was opened pursuant to their knock, the officers entered and observed a nine-millimeter bullet, which the defendant sought to have suppressed. The supreme court relied on the uncontroverted testimony presented on the evidentiary hearing of the suppression motion in finding that exigent circumstances existed which justified the officer's warrantless entry into the defendant's residence, two justices dissenting. Again, in the case at bar, we note the trial court did not rely on evidence of exigent circumstances in denying the defendant's motions to quash and suppress. None was presented.

The exigent circumstances on which the supreme court relied in *Abney,* which are conspicuously absent in the case at bar, were, "[f]irst, the officers were acting on 'a clear showing of probable cause,'" which had been acquired by the officers in *Abney before they entered the defendant's residence.* "Second, the defendant was clearly identified as the assailant" in *Abney* by name and address before the officers entered the defendant's residence. "Third, the victim's statement created strong reason to believe that defendant was in the premises entered" in *Abney.* (81 Ill. 2d at 172.) In the case at bar there was no evidence that the officer had a "strong reason to believe that the defendant was in the premises entered."

Courts and society encourage citizens to comply with the requests and certainly the commands of law enforcement officers. Citizens should not, however, be encouraged to do so at the peril of their compliance being later judicially construed for the first time on appellate review as a waiver of a hallowed constitutional right without an opportunity to refute, by evidence, such a construction. The defendant's mother's compliance with an armed uniformed police officer's command at the midnight hour to enter her home, in which only she and her minor children were present and in which there was no adult male upon whom she could rely for protection or direction, on the state of the record before us, should not be initially construed by this court as a consensual entry. The record does not reveal that she had any feasible or reasonable recourse. To suggest that she should have slightly, even verbally, resisted the officer's entry to avoid her conduct being judicially construed as a waiver promotes undesired disrespect for law enforcement officers and unwanted physical resistance to their commands, whether the command is valid or invalid.

I am of the opinion that the trial court improperly overruled the defendant's motions to quash his arrest and suppress the evidence de-

rived therefrom on the erroneous ground that the defendant failed to meet his burden of establishing how the arresting officer entered his residence or that the officer's entry was unlawful. I am of the further opinion that the trial court erred when it denied the defendant's request for an opportunity to establish by the presentation of additional evidence the circumstances of the officer's entry into his home. In my judgment, the majority is also mistaken and compounds the trial court's error when it affirms the trial court's denial of the defendant's motions to quash and suppress on this court's *ab initio* finding that the arresting officer's entry into the defendant's home, which was never raised in the trial court and which has been raised for the first time on appeal, was consensual. Appellate courts are powerless to make *ab initio* findings of fact. The power of an appellate court is limited to reviewing the facts as found by the trial court and the trial court's ruling thereon to determine whether the facts are supported by the record and if that ruling is correct. At the very least the defendant was and is entitled to an opportunity in the trial court to refute this consensual entry contention via his presentation of evidence.

By reason of the foregoing, and being bound by *Franklin, Jackson, Carlson, Precup, Holloway, Wever, Chianakas, Williams* and *Abney*, if the doctrine that the entire trial record may be relied upon to sustain a State's contention never raised, relied or ruled on in the trial court and raised for the first time on review is to be expanded, such expansion, in my judgment, should be initiated by the supreme court and not by our intermediary appellate court. If these cases are to be overruled, they should be directly overruled by our supreme court and they should not be overruled inferentially by our intermediary appellate court. The trial court erred in denying the defendant's motion to quash and suppress, and the defendant's conviction should therefore be reversed and the cause should be remanded for a new trial.

I am also of the opinion that the trial court erred when it refused the defendant's proposed instruction on impeachment by omission, which likewise requires reversal. An issue at trial, realistically and for all practical purposes the only issue at trial, was the authenticity and accuracy of the victim's identification of the defendant as her assailant. The defendant and the jury had the right to have the jury correctly and completely instructed on the law applicable to each aspect of this crucial issue. The jury was not so instructed.

Contrary to the majority's unsupported conclusion that "[t]he evidence as to her rape by defendant with a gun at her throat was clear

and convincing" (177 Ill. App. 3d at 746-47), the defendant argues, with merit, that the State's evidence was woefully weak. The defendant points out that the victim initially stated to the investigating officers and June that the name of her assailant was "Michael," whom she had earlier seen with June. The officers went to June's house and inquired of him about Michael. June told the officers and the victim that he did not know any person by the name of Michael and that the name of the person with whom he had earlier conversed was Gerald Walker.

The victim and her police officer father went to Gerald Walker's home, and without any evidence that she knew the lady to whom she was talking or that Gerald Walker was that lady's son, and before she even saw him, the victim stated to her, "Your son, Gerald, raped me." The defendant persuasively argues that this identification was indeed presumptuously premature.

When the defendant heard the victim's accusation, he made no attempt to flee or to conceal his presence. Without being requested and having heard the accusation and knowing that a police officer was present, the defendant immediately came out of his room. The victim again accused him. It is elementary that such an accusation is not evidence of guilt unless the accusation is admitted and no evidence was presented that the defendant ever admitted tht he committed the offense. Although the victim's assailant used a gun in the commission of the offense, no gun was found in the defendant's possession. It is also apparent from the record before us that the defendant had unique visible facial characteristics of "prominent ears which 'stuck out' or 'stuck up'" and a chipped tooth, which the victim never mentioned until the trial.

In answer to cross-examination inquiry if she observed anything unusual or unique about her assailant's face, the defendant urges in an attempt to buttress her identification of the defendant as her assailant, the victim falsely responded that her assailant had a chipped tooth and ears which stuck out. The defendant further urges that the victim also falsely testified that she told: (1) the officers who were summoned to her grandmother's home and to whom she initially reported the attack; (2) the investigating officers who interviewed her at the hospital; anc (3) her father, who, as stated, was also a police officer, that her assailant had a chipped tooth and protruding ears or ears that stuck out. Each of these officers, including the victim's father, however, denied that the victim ever told either of them that her assailant had these unusual visible facial features.

It was for the jury to decide whether or not the victim gave such

a description of her assailant to these officers. It was likewise for the jury's determination what weight or credibility to give the victim's testimony if the jury decided that she did give such a description or if the jury decided that she omitted such description of her assailant when she described him to these officers. The jury had a right to be correctly and completely instructed and the defendant had the right to have the jury properly and totally instructed on the law on impeachment by omission, which involved the assailant's identification, the decisive issue in the case for the jury's determination.

During the jury instruction conference, the defendant tendered to the trial court the following instruction on impeachment by omission:

> "The omission of a witness to state a particular fact under circumstances rendering it likely that he should state that fact, if true, may be shown to discredit his testimony as to such fact."

The trial court readily agreed with defense counsel that impeachment by omission was not covered by Illinois Pattern Jury Instructions. The trial court also agreed that the defendant's foregoing proposed instruction correctly "stated the law." The People do not question before this court the accuracy of this proposed instruction. Nevertheless, the trial court refused to give the jury the tendered instruction, stating, in his refusal, that the jury could determine credibility "without the benefit of this instruction," and that the tendered instruction was "not designed for this kind of situation," where the witness "was under emotional circumstances." During the instruction conference the following colloquy occurred regarding this foregoing instruction:

> "THE COURT: Well, you see, this instruction should not be given because that is a conflict in the evidence ***. It does not mean that the officer is right and that the victim/witness is wrong.
>
> * * *
>
> [DEFENSE ATTORNEY]: That's right ***. But that is a determination the jury has to make.
>
> * * *
>
> Why should they not be instructed on it, Judge? It's not argumentative. It is neutral.
>
> * * *
>
> And it states the law.
>
> * * *
>
> THE COURT: Yes, it does state the law. But, you see, it takes advantage or it would of the evidentiary situation. What

the girl said, the victim, to the officer at the time that she was—it was under emotional circumstances.

&ast; &ast; &ast;

So you say to the jury that she should have said everything that one might logically and rationally say at that time and that if she did not her testimony may be discredited &ast;&ast;&ast; [*sic*] would be wrong.

&ast; &ast; &ast;

In that she could not have been expected at that time &ast;&ast;&ast; this instruction is not designed for that kind of situation.

&ast; &ast; &ast;

&ast;&ast;&ast; [T]his instruction is in no way designed for that kind of situation where a person, a victim of a crime is talking shortly afterwards to an officer at a hospital &ast;&ast;&ast;. [T]his instruction is designed for a situation more likely where one is being asked questions in a rational manner and any reasonable person would assume that from the questions and answers or from the discussion held that something would have been said.

&ast; &ast; &ast;

[DEFENSE ATTORNEY]: She gave a clothing description and a physical description.

&ast; &ast; &ast;

In the physical description she said nothing at all about the man's teeth or his ears. Now, as she testified here on the stand, she was asked well, was there anything at all that stood out about the man's physical features, his face? She said the tooth. She then said something about his ears sticking out or sticking up. *Did you tell that to the police? Yes, I did. Did you tell that to the first police officers who came to the house? Yes, I did. Did you tell the officers at the hospital? Yes, I did.*

&ast; &ast; &ast;

THE COURT: Maybe she didn't &ast;&ast;&ast;. &ast;&ast;&ast; [B]y this instruction you would take advantage of the victim/witness by so instructing the jury. &ast;&ast;&ast; [T]his is not the kind of situation, as I have said, where I think that this instruction—I don't think it was designed for this kind of situation." (Emphasis added.)

The trial court refused to give the defendant's foregoing proposed instruction on impeachment by omission. Defense counsel then tendered the following instruction as an alternative.

"It is a general principle of evidence that the failure to assert a fact when it would have been natural to assert it amounts in effect to an assertion of the non-existence of that fact."

The defense attorney relied on *People v. King* (1973), 10 Ill. App. 3d 652, 295 N.E.2d 258, as authority for giving this instruction. The trial court refused it.

The trial court's stated basis for rejecting the defendant's proposed instruction on impeachment by omission was legally erroneous, factually incorrect and logically unsound. The People's argument in their brief before this court in an attempt to uphold the trial court's rejection of the proposed impeachment by omission instruction is also diabolically fallacious. The People's brief initially argues:

"The impeachment by omission theory is not applicable here since the victim's prior statements were given under stressful and traumatic conditions and not under the usual conditions giving rise to impeachment by omission.

\* \* \*

The [trial] judge went on to reiterate that the instruction was not designed to cover the situation of a crime victim being questioned at the hospital, rather it covers witnesses in a normal situation being asked questions in a rational manner and thus being expected to respond reasonably.

\* \* \*

In the instant case, as the [trial] court noted, the situation involved a rape victim \*\*\*. This victim then had to undergo questioning immediately after the attack \*\*\*. The victim's statements were thus not taken under normal conditions to say the least.

\* \* \*

The very nature of impeachment by omission is heavily predicated on what the normal course of a statement should be. To put such an impeachment instruction in the context of a rape victim's immediate statements after a highly traumatic crime results in an unfair emphasis being placed on minor details of the victim's testimony, such as the appearance of the teeth and ears of her assailant.

\* \* \*

Therefore, impeachment by omission instructions are not appropriate in a rape case where the victim allegedly omits including the features of a 'chipped tooth and ears that stuck out' in giving her initial description of the offender to the police."

After stating the above the People then, quite aptly, point out in their brief before this court:

[D]efendant claims impeachment by omission in that the police reports and the testimony of the investigators and of the initial

responding officers failed to indicate that *defendant had a 'chipped tooth and ears that stuck out,' a description which the victim testified she had given the police."* (Emphasis added.)

Therein lies the absolute fallacy in the trial court's aforestated refusal to give the defendant's proposed instruction on impeachment by omission and also in the People's aforestated argument in support of the trial court refusal; namely, the victim testified that she *DID* give such description to the police officers. Thus, the contention that the victim was justified or excused in not having given such a description, because of her traumatic rape experience or because of the circumstances in which she spoke to the officers, thereby validating the trial court's rejection of the defendant's tendered jury instruction on impeachment by omission, was obviously ill-founded and was patently flawed.

But, here again, the majority resorts to a totally different ground than the aforementioned erroneous grounds on which the trial court mistakenly relied in refusing the defendant's tendered instructions on impeachment by omission. Again, a point not raised in the trial court is considered waived on review. Again, what is good for the goose is good for the gander. The majority wrongly concludes that the trial court's refusal to give the defendant's tendered instructions on impeachment by omission was excused because "that principle has been covered correctly and sufficiently by another instruction." (177 Ill. App. 3d at 747.) This simply is not so. Moreover, as pointed out, this is not the ground on which the State relies before this court as justification for the trial court's refusal to give the defendant's tendered instructions on impeachment by omission.

The only other instructions in the record on appeal to which the majority could be possibly referring is not an instruction on impeachment by a prior inconsistent statement. This instruction simply, but inadequately and insufficiently, stated "the believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom." In addition to this instruction being inadequate to cover the victim's failure to have told the officers that her assailant had a chipped tooth and protruding ears, this instruction covers the victim's denial that she told June that the name of her assailant was Michael and June's contrary testimony that the victim did tell him that her assailant's name was Michael.

A witness' failure to state a fact on an earlier occasion may prop-

erly be shown in impeachment. (*People v. Monroe* (1977), 66 Ill. 2d 317, 324, 362 N.E.2d 295), and "the omission of a witness to state a particular fact under circumstances rendering it \*\*\* likely that he would state that fact, if true, may be shown to discredit his testimony as to such fact." (*People v. Brown* (1977), 47 Ill. App. 3d 920, 928-29, 365 N.E.2d 514.) The credibility of the witness "as to the existence of such fact is adversely affected." *People v. Fabran* (1976), 42 Ill. App. 3d 934, 938, 356 N.E.2d 982.

The defendant had the right to have the jury properly instructed on his theory of the case and "on the law applicable to any state of facts which the jury might properly find to have been proved." (*People v. Robinson* (1973), 14 Ill. App. 3d 135, 140, 302 N.E.2d 228.) Instructions are designed to and should "convey to the jurors the correct principles of law applicable to the evidence so that the jury, after making its findings, can apply the proper legal principles" (*People v. McEvoy* (1975), 33 Ill. App. 3d 409, 413, 337 N.E.2d 437), and enable the jury to "arrive at a correct conclusion according to the law and evidence" (*People v. Plum* (1976), 44 Ill. App. 3d 922, 925, 358 N.E.2d 1235). Although defense counsel's proposed instructions on impeachment by omission were not from Illinois Pattern Jury Instructions, the prosecutor and the trial court agreed that they correctly stated the law. The defendant had the right to have and the trial court was obligated to properly and completely instruct the jury with instructions on subjects not included in Illinois Pattern Jury Instructions. *People v. Craig* (1979), 79 Ill. App. 3d 584, 589, 399 N.E.2d 168.

For the reasons stated, it is my opinion that the trial court erred in refusing the defendant's tendered instructions on impeachment by omission and the defendant's judgment of conviction and the 12 years' imprisonment sentence entered thereon should therefore be reversed and the cause should be remanded for a new trial.